(815 P.2d 1125)

No. 65,881

In the Matter of the Marriage of JULIE ANN MCNEELY, *Appellee*, and ROBERT ANDREW MCNEELY, *Appellant*.

Petition for review denied November 5, 1991.

Opinion filed August 2, 1991.

*David J. Berkowitz*, of Berkowitz & Chappell, of Lawrence, for appellant.

*Janet L. Damore*, legal intern, and *Shelley Hickman Clark*, supervising attorney, of Douglas County Legal Aid Society, of Lawrence, for appellee.

Before BRISCOE, C.J., GERNON and LEWIS, JJ.

LEWIS, J.: This appeal is taken by Robert McNeely from the orders of the district court which increased his child support obligation and denied him certain requested changes in visitation with his children. The appellee is Julie McNeely, who was formerly married to Robert. There were two children born to that marriage. It is the support of and visitation with these two children that is the focus of this appeal.

Upon a careful review of the record and the issues, we affirm.

The trial court had before it competing motions to modify the original monthly child support award of $364. Julie asked the court to increase it, while Robert asked the court to reduce it. Robert also complained about difficulty which he and his parents were having in exercising visitation rights with the children. As might be expected, Robert blames Julie for the visitation problems, and Julie blames Robert.

The court held an evidentiary hearing into the matters raised by the parties' motions. The court heard the testimony of both parties giving their version of the relevant facts. After hearing the evidence, the trial court determined that Robert's share of the child support, computed under the Kansas Child Support Guidelines (Administrative Order No. 75 [1990 Kan. Ct. R. Annot. 56-75]), was $656 per month. The court also adjusted the visitation schedule of the parties.

Julie testified that she was a student at the University of Kansas and was working towards a degree in social welfare. She testified that she hoped to complete that degree in the summer of 1991 and become employed. She stated that her domestic gross income was $750 per month and that income consisted of student loans and grants. She also testified that she received ADC in the amount of $409 per month and had assigned her child support to SRS. Her testimony indicated that, out of her student loans and grants, she paid tuition and book expense of approximately $1,550 for each fall and spring semester. Apparently, Julie was not employed at a conventional job and listed no income by way of wages.

Robert testified that he had remarried since the parties' divorce, that his current wife was employed, and that he and his wife were residents of the State of Florida. Robert testified that he was employed and was earning $2,000 per month at the time of the hearing. However, Robert also testified that he planned to enter law school in the State of Florida and that when he did so, the income from his job would be reduced to $1,000 per month for the nine months he would be attending law school.

One of the principal issues on this appeal is whether the trial court erred in considering child care costs in its award of child support. Julie testified that she had child care costs incurred in attending KU of $606 per month during the fall and spring semesters. She testified that, during the summer break from school, child care costs were $50 per week. When these child care costs were annualized over a 12-month period, they result in monthly child care costs of $521.

Robert testified that, in his opinion, his child support obligations should be a maximum of $158 per month. He also strongly objects to the allowance of child care costs to Julie, since she

was neither employed nor searching for a job, but was a full-time student.

There was considerable testimony concerning the difficulties that Robert and his parents had in visiting with the children. We will not recount this testimony to any extent except as is necessary to resolve those specific issues.

Robert raises a number of issues, and we shall treat each issue separately.

## VISITATION ALLOWED TO ROBERT

As indicated, there was testimony that Robert and Julie were unable to agree upon a visitation schedule with the children. Robert also testified that his parents had been denied visitation with the children. Robert testified that he felt he should have the children with him for three months during the summer, beginning immediately, and one month during the winter. Julie, on the other hand, testified that, given the ages of the children and the fact that they have been separated from their father for some time, three to six weeks' visitation would be the maximum she felt the children would be able to handle.

It is clear that a trial court's order regarding visitation will not be reversed on appeal if it is supported by substantial competent evidence. See *Miracle v. Miracle*, 208 Kan. 168, 490 P.2d 638 (1971). The standard of review enunciated quite clearly in *Simmons v. Simmons*, 223 Kan. 639, 576 P.2d 589 (1978), applies equally to change of custody and child visitation situations:

"The question of a change of custody is addressed to the sound judicial discretion of the trial court and the appellate court's review of the trial court's determination is very limited. [Citation omitted.] The trial court is in the most advantageous position to judge how the interests of the children may best be served. [Citations omitted.] While an appellate court has only the printed page to consider, the trial court has the advantage of seeing the witnesses and parties, observing their demeanor, and assessing the character of the parties and quality of their affection and feeling for the children. [Citation omitted.] The judgment of the trial court will not be disturbed without an affirmative showing of an abuse in the exercise of discretion." 223 Kan. at 643.

The trial court, after hearing the evidence and observing the parties, concluded that the children were too young to be away from the stable environment of their home with their mother for

the period of time requested by Robert. The evidence indicated that Robert had not seen the children for some period of time. The trial court concluded that Robert's parents lived in the vicinity of Lawrence, Kansas, and that he could combine visits with his parents to coincide with visits with the children for the first year. The trial court then provided that, beginning in the summer of 1991, Robert should have visitation with the children during the month of July and that he should have a winter visit with the children during the month of January, beginning in 1992.

We hold that the trial court's order regarding visitation is supported by substantial competent evidence, and we affirm that order. There is considerable evidence in the record to indicate that the order entered by the trial court is in the best interests of the children of the parties, and we see no reason to disturb that order.

Robert attempted to question Julie about her denial of visitation to Robert's parents. The trial court ruled that this evidence was irrelevant, refused to hear it, and refused to allow a proffer to be made of that evidence. Robert complains about the trial court's ruling in regard to this evidence. We have reviewed the record and find that the trial court, in fact, heard Robert's testimony that Julie had made it difficult for him to live in Kansas and that she had prohibited visitation by his parents. There is no abuse of discretion in a court not allowing testimony to be further developed where the essentials of the testimony are known and there is no indication that further evidence would have been helpful to the court. *McClaren v. McClaren*, 214 Kan. 217, 218-19, 519 P.2d 720 (1974). The testimony by Julie, which the court refused to hear, would have been merely cumulative, and there is no indication that that evidence would have been helpful to the court. We hold the trial court did not abuse its discretion in refusing to allow Robert to cross-examine Julie as to evidence which had already been made available to the trial court.

## DID THE TRIAL COURT ERR IN DETERMINING THAT FULL-TIME INCOME SHOULD BE IMPUTED TO ROBERT?

Robert testified that he was earning $2,000 per month at the time of the hearing. However, he advised the court that he

planned to enter law school and that, when he did, he would work part-time for $1,000 per month.

The trial court found that "[t]he Respondent has the ability to earn and is earning $2000.00 monthly; thus, in any event, the Respondent's gross monthly income is determined to be $2000.00 actual or imputed." Robert complains about the trial court's findings concerning his income. He argues that the court should have used his actual annualized income of $1,250 per month. We disagree. We have examined the record and find that, at the time of the hearing, Robert was employed full time. He was not enrolled in law school, and his income was $2,000 per month. As a result, the finding of the trial court quoted above is supported by the record and is correct. If Robert's income is reduced substantially at any time in the future, his remedy is to file a motion for appropriate relief.

We further believe that, even if Robert entered law school and lowered his income, the court could properly impute $2,000 per month income to him. Under the child support guidelines, income may be imputed to the noncustodial parent in appropriate circumstances. Administrative Order No. 75, Section II.,E.,1 (1990 Kan. Ct. R. Annot. 58).

The trial court found:

"It is only just that the Respondent forego his quest for additional education at least until the Petitioner has had the opportunity to obtain her undergraduate degree. When parties are parents of children of tender years, they are required to care for those children to the best of their ability, even though sacrifices must be made."

We agree with those sentiments echoed by the trial court. It is possible that Robert may have to put off his attendance at law school until the mother of his two children has graduated and received her undergraduate degree. It seems to us that this is clearly in the best interests of the children, and, although it may be some sacrifice to Robert, such sacrifices are often required by parents of children of tender years.

Robert was earning $2,000 per month at the time of the hearing, and it is questionable whether he should be allowed to voluntarily reduce his income by attending law school so that his support obligation could be reduced. Courts have been reluctant to allow this. See Elrod, *Kansas Child Support Guidelines: An*

*Elusive Search for Fairness in Support Orders,* 27 Washburn L.J. 104, 131-32 (1987) (citing *Guinn v. Guinn,* 405 So. 2d 620 [La. App. 1981]; *Beal v. Beal,* 290 N.C. 669, 228 S.E. 2d 407 [1976]; *Roberts v. Bockin,* 315 Pa. Super. 52, 461 A.2d 630 [1983]).

The trial court found that Robert was earning $2,000 per month at the time of the hearing and had the ability to continue to earn $2,000 per month and used this figure to calculate the support obligation. This was not an abuse of discretion, and we affirm the trial court's action in this regard.

## CHILD CARE COSTS

In determining the proper amount of child support to be awarded in this case, the trial court attempted to follow the Kansas Child Support Guidelines. We have held that, where they apply, these guidelines must be followed in computing child support orders in this state. *In re Marriage of Schletzbaum,* 15 Kan. App. 2d 504, 506-07, 809 P.2d 1251 (1991). We view the instant matter as one where the guidelines are not applicable under the facts.

The basic child support obligation computed in the case under consideration was $524 per month. The trial court added to that figure $521 per month for child care costs. The total monthly child support so computed was $1,045. Robert's share of the total monthly child support was 76%, which amounted to $794. The trial court then gave Robert credits of $138, reducing his net monthly child support obligation to $656.

Robert is particularly upset that the trial court awarded child care costs under the facts of this case. He argues that such costs are not permitted under the guidelines because Julie was not employed and was not searching for a job. Robert argues that the trial court abused its discretion in awarding child care costs to an unemployed student.

This is an issue of first impression in Kansas, and our research has revealed no decisions of sister states to assist us.

We begin our discussion by noting that the guidelines are being treated in this case as if they were absolutely controlling. The argument is made that, if the child care costs do not fit the guidelines chapter and verse, they simply cannot be awarded.

We are of the view that, in this case, the significance of the guidelines has been inflated far beyond what was intended by the Supreme Court.

Our standard of review in cases of this nature remains abuse of discretion. The guidelines have not changed the basic nature of our review:

"The standard of appellate review applicable to an appeal from a trial court's order determining the amount of child support is whether the trial court abused its discretion. [Citation omitted.] Judicial discretion is abused when action is arbitrary, fanciful, or unreasonable, which is another way of saying discretion is abused when no reasonable person would take the view adopted by the trial court. [Citation omitted.]" *In re Marriage of McPheter*, 15 Kan. App. 2d 47, 48, 803 P.2d 207 (1990).

See *Hoffman v. Haug*, 242 Kan. 867, 873, 752 P.2d 124 (1988).

In viewing the trial court's decision in the light projected above, we are unable to conclude that the award of child care costs in this case was an abuse of discretion. This review is made quite independently of the guidelines and does not depend, in the least, on their existence or nonexistence. We are of the view that trial courts of this state have always had the authority to award child care costs as an element of child support and this authority does not depend upon the guidelines for legitimacy. It springs from the inherent power of the court to enter whatever order it deems is in the "best interests of the children." This inherent power comes from the legislative grant set forth in K.S.A. 1990 Supp. 60-1610(a), in which the legislature has granted the courts of this state power to order proper child support and has said: *"In determining the amount to be paid for child support, the court shall consider all relevant factors*, without regard to marital misconduct, including the financial resources and needs of both parents, the financial resources and needs of the child and the physical and emotional condition of the child." (Emphasis added.)

There is ample authority from the legislative grant of power to award child care costs notwithstanding the provisions of the guidelines.

We intend to deal with Robert's argument concerning the terms of the guidelines. However, we initially hold that it was within the discretion of the trial court to make the order in question. We find no grounds to conclude that such discretion was abused.

The guidelines have a provision concerning work-related child care costs. That provision is set forth in Administrative Order No. 75, Section V.,D.,5 (1990 Kan. Ct. R. Annot. 64):

"Actual, reasonable, and necessary child care costs incurred to permit employment or job search of a parent should be added to the support obligation. The monthly figure is the averaged annual amount, including variations for summer, adjusted using the table below. Projected child care expenses should be reduced by the anticipated tax credit for child care before an amount is entered on the Worksheet."

The first question that comes to mind is whether this statement is all-inclusive. That is to say, may child care costs be awarded *only* when the custodian of the children is employed in the usual sense or is looking for a job in the conventional sense? We think that question must be answered in the negative. The guidelines are, after all *only guidelines*. They do not purport to cover every conceivable situation and do not provide an answer to every conceivable question. The Supreme Court, in enacting these guidelines, did not intend to supersede K.S.A. 1990 Supp. 60-1610, nor can these guidelines be held to render a trial judge powerless to make awards based on "all relevant factors." The case at bar may not fit the guidelines with preciseness and exactness. Julie is simply not employed as that term is generally used. Yet, without some help with child care costs, her future employment may be tied to the minimum wage.

We are persuaded that, where a case falls factually outside the child support guidelines, those guidelines do not limit the authority of the court. Under such circumstances, our review is strictly one of abuse of discretion. Insofar as the guidelines are designed to deal with the question of child care costs, we hold that this case falls outside of those guidelines. The generally accepted definition of the term used in the guidelines do not fit the facts here. That does not mean that child care costs may not be awarded in any event. It simply means that the definition used in the guidelines is irrelevant to a determination of whether the court abused its discretion. Those provisions of the guidelines dealing with tax credits and the like are applicable, should be applied, and were applied by the trial judge in this case.

We affirm the decision of the district court awarding child care costs. We see no abuse of discretion.

In reaching its decision, the trial court held that Julie had taxable income of approximately $750 per month. This income was, according to Julie's testimony, from student loans and grants. Robert alleges that these sources of income are not taxable. While we are not absolutely convinced that some of Julie's student grants are not taxable income, by and large we agree that it stretches the definition of taxable income to include within it student loans. We are even willing to go so far as to agree with Robert that the trial court erred in this conclusion. However, this does not change our decision. In *Salem v. Salem*, 214 Kan. 828, 832, 522 P.2d 336 (1974), the court, in discussing 60-1610(b) concerning property division, stated:

"Many factors may be considered in reaching a decision which satisfies the statutory requirement of 'just and reasonable.' [Citations omitted.] The fact the trial court made a statement as to the law which might be considered erroneous does not affect the validity of a judgment which otherwise satisfies the statutory directive."

Thus, even though the court may have mischaracterized Julie's income as taxable, it does not affect the validity of the judgment. The judgment clearly satisfies the directive of K.S.A. 1990 Supp. 60-1610(a)(1), and we affirm it.

Affirmed.