(920 P.2d 965)
No. 73,272

STATE OF KANSAS *ex rel.* SECRETARY, SOCIAL AND REHABILITATION SERVICES; CHRIS M. MADISON; and B.L.M., by and through her next friend, CHRIS M. MADISON, *Appellants,* v. EDWARD L. HUFFMAN, *Appellee.*

Opinion filed July 5, 1996.

*Stacie Wittman*, of Kansas Department of Social and Rehabilitation Services, for appellants.

No appearance by appellee.

Before PIERRON, P.J., GREEN, J., and RICHARD W. WAHL, District Judge Retired, assigned.

GREEN, J.: This litigation involves a paternity and child support action brought by the Kansas Department of Social and Rehabilitation Services (SRS) against Edward L. Huffman. On appeal, SRS challenges the child support order established by the trial court. We affirm.

SRS filed a paternity and child support action against Huffman. When the petition was filed, the child was 9 years old. The trial court found that Huffman was the child's father. The trial court later issued an order requiring Huffman to begin paying child support. SRS appeals from that order.

In reviewing a trial court's decision on child support, we may reverse only when the trial court has abused its discretion. A child support order entered without compliance with the child support guidelines is an abuse of discretion. See *In re Marriage of Emerson*, 18 Kan. App. 2d 277, 278, 850 P.2d 942 (1993). "Judicial discretion is abused when action is arbitrary, fanciful, or unreasonable, which is another way of saying discretion is abused when no reasonable person would take the view adopted by the trial court." *In re Marriage of McPheter*, 15 Kan. App. 2d 47, 48, 803 P.2d 207 (1990).

SRS first argues that the trial court erred in applying the multiple family adjustment when it calculated the amount of child support Huffman must pay. Section II.L. of the 1994 Kansas Child Support Guidelines, Supreme Court Administrative Order No. 90 (1995 Kan. Ct. R. Annot. 86), provides: "The Multiple-Family Adjustment is used to adjust the noncustodial parent's child support obligation when the noncustodial parent has legal financial responsibility for the support of other children who reside with the noncustodial parent in addition to the children shared with the custodial parent."

Section IV.F. (1995 Kan. Ct. R. Annot. 89) provides:

"The Multiple Family Adjustment may only be used by a noncustodial parent when an increase in support is sought by the custodial parent. . . .

"For the Multiple Family Adjustment, if the noncustodial parent has children by another relationship who reside with him/her, the Child Support Schedule representing the total number of children that the noncustodial parent legally is obligated to support shall be used in determining the basic support obligation."

Because Huffman had two other children living in his home, the trial court used the multiple family adjustment, applying the three-child chart to calculate the amount of support due. SRS argues that this was error because the adjustment is appropriate only "when an increase in support is sought" by the custodial parent. Because no support order previously existed, SRS argues that this is an establishment case, not an increase case.

The trial judge, after noting that the guidelines provide that this adjustment should be used only in increase cases, reasoned:

"I think in a divorce action it's different than in a paternity action. . . .

"I think the way the guidelines indicate that the additional children in the home cannot be used as a reason to decrease child support unless there's a request for an increase. So in my vernacular it appears that you can use extra children as a defense but not as an offense, not as a sword, and since this is a new order I think I probably need to take into consideration the other children since it's a new request for support . . . ."

At the hearing on SRS's motion for reconsideration, the trial court stated:

"I am viewing this case as I would any other case establishing support after such a long period of time as to be an increase from zero support to the support that I have ordered. I find that the multiple family adjustment is in fact appropriate in this case. This man had this child for some number of years before request for support was asked for and this case filed and this Court will find that the fact that he had other children since that child was born should not be used against him. That there has been no request for an increase in support prior to this time and so I am viewing this as a request to increase his support. And as noncustodial parent I believe the guidelines give him the right to assert the multiple family adjustment."

Although we will reverse a trial court's ruling on child support only when the trial court abused its discretion, this issue involves interpretation of the child support guidelines, which gives us un-

limited review. See *Scruggs v. Chandlee*, 20 Kan. App. 2d 956, 957, 894 P.2d 239 (1995).

Section IV.F. (1995 Kan. Ct. R. Annot. 89) provides: "In the instance of shared custody or divided custody, the Multiple Family Adjustment is available to either party in defense of a requested child support increase." This supports the trial court's conclusion that the effect of the multiple family adjustment is that a party may use extra children as a defense but not as an offense.

The examples provided in section V.D.3. (1995 Kan. Ct. R. Annot. 92-93) of the guidelines are not helpful. Only two of those examples refer to children from separate relationships and both speak in terms of the noncustodial parent "remarrying," thus implying that a support order must be entered before other children became a factor. In such cases, the only time the multiple family adjustment would apply is when support modification is at issue, not when support is initially established.

These examples not only fail to address the present situation, where support is not established until the noncustodial parent has other children in his care, but they also do not address situations where a second marriage ends in divorce and the noncustodial parent has custody of children from a previous marriage.

If the multiple family adjustment may be used only when increasing an existing support order, and not when initially establishing a support order, then a noncustodial parent's legal financial responsibility for supporting other children who reside with that parent would never be a factor when establishing support. Such an application would be inequitable to the noncustodial parent.

In a case that we determined fell outside the guidelines, we stated:

"The guidelines are, after all, *only guidelines*. They do not purport to cover every conceivable situation and do not provide an answer to every conceivable question. The Supreme Court, in enacting these guidelines, did not intend to supersede K.S.A. 1990 Supp. 60-1610, nor can these guidelines be held to render a trial judge powerless to make awards based on 'all relevant factors.' The case at bar may not fit the guidelines with preciseness and exactness. [Petitioner] is simply not employed as that term is generally used. Yet, without some help with child care costs, her future employment may be tied to the minimum wage.

"We are persuaded that, where a case falls factually outside the child support guidelines, those guidelines do not limit the authority of the court. Under such circumstances, our review is strictly one of abuse of discretion. Insofar as the guidelines are designed to deal with the question of child care costs, we hold that this case falls outside of those guidelines. The generally accepted definition of the term used in the guidelines do not fit the facts here. That does not mean that child care costs may not be awarded in any event. It simply means that the definition used in the guidelines is irrelevant to a determination of whether the court abused its discretion." *In re Marriage of McNeely*, 15 Kan. App. 2d 762, 769, 815 P.2d 1125, *rev. denied* 249 Kan. 776 (1991).

Here, the present case is not controlled by the child support guidelines. The provision that the multiple family adjustment is to be used only "when an increase in support is sought" does not fit these facts. Consequently, the trial court did not abuse its discretion in using the multiple family adjustment in determining the amount of support owed by Huffman.

SRS next complains that the trial court erred in applying an adjustment for income tax considerations to Huffman's child support obligation. It argues that "there is a presumption in the child support guidelines that the parties agree to alternate the income tax exemption unless evidence is presented indicating otherwise." It further argues that there was no evidence at all regarding income tax considerations.

SRS is correct that there was no evidence regarding income tax considerations. It is not correct, however, that the guidelines provide a presumption on this issue. Section V.E.3. (1995 Kan. Ct. R. Annot. 98) of the guidelines provides:

"If the parties agree to share the economic benefits of the income tax exemption for a minor child, this section shall not be used. If the parties are unable to agree to share or alternate the exemption or, after agreeing the custodial parent refuses to execute IRS Form 8332, the court shall consider the economic effect to both parties and may adjust the child support. The court may also consider any other tax impacts."

Nothing in this section indicates that there is a presumption that the parties agree to alternate the income tax exemption unless the evidence indicates otherwise.

At the hearing on SRS's motion for reconsideration, the trial court asked if there was a proffer of testimony that the mother

would alternate the tax exemption. SRS's counsel responded in the negative. The trial judge then stated, "Well, if there's no testimony then that will stand in terms of me giving the defendant the appropriate tax credit that would be available to him if he were allowed to claim the child every other year."

Because there was no evidence of an agreement to share or alternate the tax exemption, the trial court was required to consider the economic effect to both parties and could adjust the child support accordingly. Therefore, the trial court did not abuse its discretion in allowing Huffman a credit for tax considerations.

SRS next argues that the trial court abused its discretion by not deducting from the mother's income a preexisting child support obligation paid to children not in her custody. Section V.C.2. (1995 Kan. Ct. R. Annot. 91) of the guidelines provides: "Preexisting child support obligations in other cases shall be deducted to the extent that these support obligations are actually paid."

The only citation supporting SRS's assertion that the mother pays a preexisting child support obligation is to the mother's domestic relations affidavit, which is appended to SRS's brief, but which is not in the record on appeal. This information cannot be considered by this court. Kansas Supreme Court Rule 6.02(f) (1995 Kan. Ct. R. Annot. 29); see *Cline v. Tittel*, 20 Kan. App. 2d 695, 702, 891 P.2d 1137, *rev. denied* 257 Kan. 1091 (1995).

Although there was testimony given at the hearing regarding Huffman's preexisting child support obligation, no testimony was given regarding the mother having such an obligation. Thus, there is nothing in the record to support the assertion that she pays a preexisting child support obligation. As a result, the trial court did not abuse its discretion in not deducting from the mother's income an amount for a preexisting child support obligation.

Finally, SRS argues that the trial court abused its discretion in determining Huffman's gross income. The trial court determined his income to be $767 monthly. SRS argues that this is in error because Huffman testified that his monthly gross income was $825, that the child support worksheet showed that he grossed $825 monthly, and that some 2 years before the hearing he stated on a loan application that he earned $12,000 to $15,000 annually. SRS

also asserts that the value of Huffman's assets should be used in determining his gross income.

Huffman's domestic relations affidavit is not in the record on appeal, and there is no testimony regarding its content in the record; therefore, any assertion regarding its contents is irrelevant. As for Huffman's testimony, at one point he testified that he currently grossed $800 a month, and at another point he testified that he currently grossed $825.

Huffman also testified that he is self-employed and submitted tax returns for the years 1989 through 1993. These returns are not in the record, but there is some testimony about them. Huffman's testimony was that his gross income ranged from a high in 1992 of $24,959, to a low in 1989 of $9,125.

As for Huffman's assets, his testimony was that he owns a house free and clear, which he built himself and which has a tax appraisal of $50,000. He also is purchasing 10 acres of land, on which he pays $150 a month and owes $6,000.

SRS argues that the value of Huffman's assets together with his testimony and affidavits unequivocally require a reasonable person to find that Huffman earns at least $825 per month. Section II.F. (1995 Kan. Ct. R. Annot. 85) of the guidelines provides: "The Self-Employment Gross Income is income from self-employment and all other sources." Section II.H. (1995 Kan. Ct. R. Annot. 86) provides: "Domestic Gross Income for self-employed persons is self-employment gross income less Reasonable Business Expenses." Section II.G. (1995 Kan. Ct. R. Annot. 86) defines reasonable business expenses, in pertinent part, as "those actual expenditures reasonably necessary for the production of income."

The trial court indicated at the close of the hearing that it was going to review all of Huffman's tax returns "to attempt to discover reasonable business expenses." The only reported case that discusses computing self-employment income under the child support guidelines is *In re Marriage of Lewallen*, 21 Kan. App. 2d 73, 895 P.2d 1265 (1995). There, the issue was whether the trial court abused its discretion in excluding depreciation as a necessary business expense. The *Lewallen* court pointed out that it was in the discretion of the trial court "to determine whether depreciation is

reasonably necessary for production of income." 21 Kan. App. 2d at 74. Similarly, a trial court also has discretion to determine the domestic gross income for self-employed persons, including the amount of reasonable business expenses to be deducted from self-employment gross income.

SRS complains that because Huffman testified that he currently earns $825 a month, that should be his domestic gross income, not $767 based on his 1993 tax return. Section II.D. (1995 Kan. Ct. R. Annot. 85) of the guidelines provides in pertinent part: "In determining Domestic Gross Income, *it may be necessary for the Court to consider historical information and the seasonal nature of employment.*" (Emphasis added.) Although the emphasized provision is not included in the guidelines' definition of self-employment gross income, the trial court has discretion to determine a party's self-employment gross income. That discretion must include consideration of historical information of a party's income, when that income varies from year to year. Consequently, the trial did not abuse its discretion in determining Huffman's income to be $767 per month.

Affirmed.