(992 P.2d 1259)
No. 81,732

In the Matter of the Marriage of BRENDA BENOIT, *Appellee,* and CURTIS STREMEL (KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, ASSIGNEE OF RESPONDENT'S CHILD SUPPORT RIGHTS), *Appellant.*

Opinion filed December 10, 1999.

*Rebecca A. Bartee,* regional supervising attorney, and *Randy Barker,* chief of litigation, Child Support Enforcement, Department of Social and Rehabilitation Services, for appellant.

*John T. Bird,* of Glassman, Bird & Braun, L.L.P., of Hays, for appellee.

Before JUSTICE ALLEGRUCCI, presiding, STEVE LEBEN, District Judge, assigned, and NELSON E. TOBUREN, DISTRICT JUDGE, ASSIGNED.

ALLEGRUCCI, J.: The Kansas Department of Social and Rehabilitation Services (SRS), as assignee of respondent Curtis Stremel's child support rights, appeals from the district court's order

granting petitioner Brenda Benoit's motion to reduce child support.

When Stremel and Benoit were divorced in 1988, Benoit had primary residential custody of their three children, and Stremel was ordered to pay child support. In March 1995, residential custody shifted to Stremel, and Benoit was ordered to pay $405 per month in support. The Multiple Family Adjustment was used in calculating Benoit's support obligation. Thereafter, SRS filed an accusation and contempt against Benoit for failure to pay the child support as ordered. Benoit filed a motion to modify child support. At the hearing on her motion for modification, Benoit testified that at the end of the 1995 school term she had resigned from her employment as a school psychologist in order to avoid being terminated. Unsuccessful at finding other employment, Benoit was starting up a wallpapering business.

In the journal entry, which was filed in July 1998, the district judge ordered that Benoit should continue to be given the Multiple Family Adjustment. He calculated child support due through December 1996. He set her child support obligation at $61 per month from January 1997 on "unless Petitioner's income exceeds $823 per month." In order to track her monthly income, the district court ordered Benoit to provide quarterly statements of her expenses and income to Stremel and SRS. On appeal, SRS contends that the district court should not have given Benoit the Multiple Family Adjustment, set the child support payments too low for her education and professional experience, and erred in ordering that her child support obligation was subject to quarterly recalculation.

Before we consider the merits of SRS's arguments, we need to address Benoit's argument that the appeal is untimely in that it became the law of the case several years ago when first applied by the district court and not appealed by Stremel (or SRS). This argument does not take into account the potential for changes in circumstances and fails to recognize the district court's continuing jurisdiction where there is a change in circumstances. Moreover, it fails to take into account the possibility that at the time the adjustment was first applied by the district court, there was no error that would have supported an appeal. Sound judicial policy does

not require a party to prosecute a meritless appeal in order to protect itself from future misapplication of a legal principle to different facts. SRS's appeal is timely.

SRS first argues that the trial court erred in continuing to apply the Multiple Family Adjustment to determine Benoit's child support obligation. Section II.L. of the 1998 Kansas Child Support Guidelines, Supreme Court Administrative Order No. 128 (1999 Kan. Ct. R. Annot. 91), provides that the noncustodial parent's child support obligation may be adjusted when he or she has legal financial responsibility for the support of children who reside with him or her in addition to legal financial responsibility for the children shared with the custodial parent. Subsection F of Section IV, the general instructions for preparing the support worksheet, provides that "[t]he Multiple-Family Adjustment may only be used by a noncustodial parent when an increase in support is sought by the custodial parent." (1999 Kan. Ct. R. Annot. 97.) Here Benoit, the noncustodial parent, was seeking a reduction.

The district court had reviewed and revised the child support of Stremel and Benoit several times before entering the order appealed from here. In March 1995, the district court had determined that Benoit's support obligation should be adjusted by application of the Multiple Family Adjustment. On the present occasion, the district court concluded that Benoit should continue to receive the benefit of the Multiple Family Adjustment. On appeal, SRS contends that the Guidelines provide clearly and unambiguously that the Multiple Family Adjustment is not available to Benoit when she is seeking a reduction in her support obligation.

SRS contends that the court's review consists of interpreting the Guidelines and, therefore, is unlimited. Benoit would have the court apply an abuse of discretion standard of review on the ground that the Guidelines do not cover the factual situation and, therefore, do not limit the authority of the court. In *In re Marriage of McNeely*, 15 Kan. App. 2d 762, 769, 815 P.2d 1125, *rev. denied* 249 Kan. 776 (1991), the court stated: "We are persuaded that, where a case falls factually outside the child support guidelines, those guidelines do not limit the authority of the court. Under such circumstances, our review is strictly one of abuse of discretion."

SRS contends that the Guidelines' precluding application of the Multiple Family Adjustment in the circumstances of the present case is the necessary corollary to the Guidelines' Section IV.F.'s restricting application of the adjustment to circumstances not present here. On this question of whether the Guidelines cover the circumstances of the present case, however, we find the court's reasoning in *State ex rel. Secretary of SRS v. Huffman*, 22 Kan. App. 2d 577, 920 P.2d 965 (1996), persuasive. In *Huffman*, SRS appealed from the initial child support order against Huffman and argued that the district court erroneously applied the Multiple Family Adjustment because the custodial parent was seeking child support, not an increase in child support. The court stated:

"Under the Kansas Child Support Guidelines, if the multiple family adjustment may only be used by a noncustodial parent when an increase in existing support is sought by the custodial parent, then the guidelines fail to address a situation when support is not established until after the noncustodial parent has other children in his or her care." 22 Kan. App. 2d 577, Syl. ¶ 3.

By the same reasoning, the Guidelines fail to address a situation when support is previously established using the Multiple Family Adjustment. In *Huffman*, the court concluded:

"When a case is not controlled by the Kansas Child Support Guidelines, the guidelines do not limit the authority of the court. Consequently, a trial court does not abuse its discretion if it uses the multiple family adjustment in the guidelines to establish an initial support order against a noncustodial parent." 22 Kan. App. 2d 577, Syl. ¶ 4.

As we noted in *Huffman*, to restrict the use of the Multiple Family Adjustment only when increasing an existing order is illogical and inequitable. When the Guidelines do not control, the district court has discretion in using the Multiple Family Adjustment to establish the support obligation of the noncustodial parent.

In the present case, where the Guidelines do not limit the authority of the district court, sound reasons support continuing application of the Multiple Family Adjustment unless and until cause why it should be discontinued is shown. Courts have continuing jurisdiction to modify child support orders when circumstances change. If the circumstances warranting the previously applied Multiple Family Adjustment are not among those that have

changed, the district court need not eliminate it when the modification sought is not an increase by the custodial parent. In the present case there has been no showing that the district court's action was arbitrary or unreasonable, and, therefore, it cannot be said that it was an abuse of judicial discretion.

SRS next argues that the district court abused its discretion in setting the child support payments too low for Benoit's education and professional experience. At the heart of SRS's position is its contention that Benoit voluntarily quit her job as a school psychologist. According to Benoit's testimony on her motion to reduce child support, she was given the opportunity to resign rather than not having her employment contract renewed and she took that opportunity. She further testified that she resigned in the belief that it would be the less detrimental alternative for the purpose of finding employment in another school district. She had been unsuccessful in securing a school psychologist position with another district. She also unsuccessfully applied for jobs outside her field of education and experience. As a result of her failure to find other employment, Benoit was starting up a wallpapering business. There was no evidence to the contrary. In these circumstances, there has been no showing that the decision of the district court was arbitrary or unreasonable.

Finally, SRS objects to the trial court's ordering quarterly recalculations. Due to the state of uncertainty and flux in Benoit's income, the district court ordered that her child support obligation was subject to quarterly recalculation. SRS objects to the lack of constancy and contends that it is an abuse of the district court's discretion to provide for quarterly re-examination of her financial condition. The district court's order in this respect was crafted to fit the circumstances and may benefit the children by resulting in increased support should her new business thrive or her financial condition prosper. We find no abuse of discretion.

Affirmed.