(152 P.3d 1265)
No. 95,756

In the Matter of the Marriage of DEBORAH L. BRANCH, *Appellee,* and CLAYTON L. BRANCH, *Appellant.*

Opinion filed March 9, 2007.

*William E. Muret,* of William E. Muret, LLC, of Winfield, for appellant.

*Mark W. Krusor,* of Taylor, Krusor & Passiglia, LLP, of Winfield, for appellee.

Before MARQUARDT, P.J., PIERRON, J., and KNUDSON, S.J.

KNUDSON, J.: Clayton L. Branch appeals the district court's decision in a post-divorce modification proceeding resulting in an award equal to 20 percent of his lump sum severance package from The Boeing Company (Boeing) for child support. Two issues are presented: (1) Did the district court err in finding the severance package is income subject to child support, and (2) did the district court abuse its discretion in awarding 20 percent of the severance package for child support?

We affirm, holding the proceeds from a lump sum severance package are income for purposes of calculating child support We further hold under the facts of this case that the district court did not abuse its discretion in ordering Clayton to pay 20 percent of the severance package for child support.

### Underlying Circumstances

Deborah L. and Clayton L. Branch were divorced on November 29, 1998. The district court ordered Clayton to pay $957.00 per month for the support of the couple's two children. Clayton filed a motion to modify child support on August 12, 2005, after he lost his employment with Boeing. Deborah replied to the motion, requesting a percentage of Clayton's severance package and that he be found in contempt for failing to remain current on his child support obligation.

At hearing, Clayton testified that he was laid off from Boeing on June 16, 2005. Under his employment contract, Clayton was entitled to a severance package. The gross amount of his lump sum severance was $22,910.40; the net was $14,284.15. Clayton testified that he was attending school through a program to retrain displaced aircraft workers and has available a federal grant of $12,000 for the retraining.

At the modification hearing, the parties agreed that the vacation pay and sick leave were earned income to be included in the calculation of the child support obligation. However, Clayton disputed that the remaining amount of his lump sum severance was income. Deborah's attorney requested that the district court enter an order consistent with those entered in similar situations with Boeing employees in neighboring Sedgwick County. Deborah requested that the court enter a 20 percent assessment against the lump sum for child support.

The district court orders included: (1) Clayton's monthly child support should be reduced from $957 to $393; and (2) Clayton should pay 20 percent of his lump sum severance package to Deborah as additional child support. On appeal, Clayton contests only the treatment of his severance package.

The district judge ruled in relevant part:

"[Y]ou got a substantial amount of money and the kids are your kids; they're entitled to share in that standard of living as well.

"It's difficult for a Court to make a determination of exactly what percentage, or how much, or what amounts of money the kids should be entitled to out of that Boeing package; but having considered the child support guidelines, the idea that child support has some relationship to a percentage of the parents' gross income, it will be the determination of this Court that 20 percent of the gross will be applied to the children, as child support.

"They will share in the monies that Boeing has paid out to their father, and it should reflect a relatively similar change to their standard of living as well. It's one time. It isn't going to reoccur, and I think you were very astute in recognizing that Boeing may not have been there to date the installments.

"But in any event, you got the money and I think the kids need to share, and they're entitled to share and should share in part of that money. I'm disappointed you didn't pay them."

## Standard of Review

The standard of review of a district court's order determining the amount of child support is whether the district court abused its discretion, while interpretation and application of the Kansas Child Support Guidelines are subject to unlimited review. *In re Marriage of Paul*, 32 Kan. App. 2d 1023, 1024, 93 P.3d 734 (2004), *aff'd* 278 Kan. 808, 103 P.3d 976 (2005). Where a case falls factually outside the child support guidelines, the guidelines do not limit the authority of the court and review is strictly one of abuse of discretion. *In re Marriage of Benoit*, 26 Kan. App. 2d 659, 661, 992 P.2d 1259 (1999).

## Discussion

The Kansas Child Support Guidelines (Guidelines) defines "domestic gross income" as "income from all sources, including that which is regularly or periodically received, excluding public assistance and child support received for other children in the residency of either parent." Supreme Court Administrative Order No. 180, Kansas Child Support Guidelines § II. D. (2006 Kan. Ct. R. Annot. 106). Public assistance is defined as income received from public sources and for which the parent is eligible on the basis of financial need.

Domestic gross income includes every conceivable form of income. *In re Marriage of Case*, 19 Kan. App. 2d 883, 892, 879 P.2d

632, *rev. denied* 255 Kan. 1002 (1994). "The definition of income is intentionally broad to include every conceivable form of income whether it be in the form of earnings, royalties, bonuses, dividends, interest, maintenance, rent or whatever." 2 Elrod & Buchele, *Kansas Law and Practice*, Kansas Family Law § 14.24, p. 352 (1999). According to Elrod and Buchele, the court may order a percentage of a bonus to be paid at the time a bonus is received if a parent receives a periodic or yearly bonus of an undetermined amount. However, if a bonus is not regularly received, it is not included as income. 2 *Kansas Law and Practice*, Kansas Family Law, § 14.24, p. 353.

Clayton states that his interest in Boeing was divided at the time of divorce and the severance package was not considered during that division. He argues that the severance package, which was negotiated after the divorce, should not be divided now. Clayton asserts that his severance package payment is more similar to public assistance, which is excluded from income under the Guidelines. Clayton argues: "Appellant has financial need and this is a private source, contracted for, that provides for his re-training and re-education and possibly living expenses until he can be re-employed."

Deborah argues that the Kansas definition of income is broad. She also refers to other jurisdictions where the statutes defining income for child support purposes specifically include severance pay. Colo. Rev. Stat. § 14-10-115(7)(a)(I)(A) (West 2003); La. Rev. Stat. § 9:315(C)(3)(a) (West 2007 Supp.); N.M. Stat. Ann. § 40-4-11.1(C)(2) (Michie 2006); Ohio Rev. Code Ann. § 3119.01(C)(7) (Anderson 2006); Okla. Stat. tit. 43, § 118 (E)(2) (West 2001 & 2007 Supp.); Tex. Fam. Code Ann. § 154.062(b) (West 2002) . She points out that at least one other jurisdiction has specifically found that a lump sum severance payment was considered income for the purposes of child support calculations even though it was not disbursed over time. Citing *Walker v. Walker*, 868 A.2d 887, 890 (Maine 2005). ("[A]n examination of the history of the statute reveals no legislative intent to distinguish lump sum severance pay from a severance package that is disbursed over time. Although severance pay is made upon the termination of employment, no

matter what form it takes it is payment derived from what *was* an 'ongoing source'—employment compensation.").

Respondent's exhibits 2 and 3, introduced as evidence at the hearing, are informative. Exhibit 2 describes the layoff benefit amount as "equal to one week of pay for each **full** year of service that you have with the Company, up to a maximum of 26 weeks of pay." Exhibit 3 states: "The Company will establish a Layoff Benefit Plan to provide for lump sum or income continuation benefits as set forth in this Article."

We hold the definition of income as defined by the Guidelines does encompass Clayton's severance pay. As shown by the exhibits, the payment is based upon his wages, showing that it is a benefit from his contract to compensate him for the layoff. Consequently, the payment is not in the nature of a one-time bonus. Moreover, Clayton's contention that the severance pay was not subject to division is unpersuasive because the district court correctly reasoned the pay was income, not a marital or postmarital asset. We further observe the severance pay is not public assistance as contemplated by the child support guidelines. The severance pay was established by his employment contract, distributed by his employer, and based on his wages and years of service, not his financial need. As noted by the Kansas Supreme Court, "[s]everance or separation pay is generally considered wages when provided for by collective bargaining agreements." *Commodore v. Armour & Co.*, 201 Kan. 412, 420, 441 P.2d 815 (1968). For all of these reasons, we conclude the district court did not err in its determination that Clayton's lump sum severance package should be treated as income subject to consideration for payment of child support.

We next consider whether the district court's factual determination as to the amount to be paid from Clayton's severance package was unreasonable.

Where a case falls factually outside the child support guidelines, the Guidelines do not limit the authority of the district court, and appellate review is strictly one of abuse of discretion. *In re Marriage of Benoit*, 26 Kan. App. 2d at 661.

Clayton contends that the district court failed to make a calculation based on the child support worksheet and arbitrarily assigned

an amount of support to be paid from the severance package. Clayton says that he needs the severance package to pay for education in order to compete for employment. He believes that the district court failed to take the best interests of the children into consideration by failing to consider his need to be retrained in order to secure employment. Clayton also does not know if he will receive a refund of any amount from the taxes withheld because he also pays tax on his unemployment benefits.

Deborah counters that the child support guidelines do not direct how to consider a lump sum payment or how to make a support calculation of a lump sum. She points out that there is no way to prepare the child support worksheet regarding the lump sum payment. Deborah also refers to the applicable child support schedule under the two child families child support schedule. See Guidelines, Appx. II (2006 Kan. Ct. R. Annot. 136-37). She notes the 20 percent award by the district court falls between the lowest and highest child support obligation percentage of gross income for two children in the 7 to 15 age bracket and so it is within the court's discretion. (The parties' children were 15 and 10 at the time of hearing.) Finally, Deborah points out that the Guidelines do not limit the authority of the court when faced with a situation outside of the Guidelines, citing *In re Marriage of McNeely*, 15 Kan. App. 2d 762, 768-69, 815 P.2d 1125, *rev. denied* 249 Kan. 776 (1991).

We conclude the child support guidelines make no provision for the calculation of child support based on a lump sum severance package. Consequently, we must consider whether the district court's determination was so wide of the mark as to be arbitrary and capricious. Here, in addition to the severance package, Clayton testified that he is participating in a retraining program and $12,000 has been provided to help pay tuition and other education costs. In addition, he is receiving unemployment compensation benefits on which his ongoing child support was calculated. It cannot be denied that as a result of Clayton's layoff, his minor children will have substantially less monetary support from their father and in all likelihood a reduced standard of living. Under all of the circumstances, it does not strike us as an arbitrary decision outside of acceptable legal reasoning for the district court to decide Clayton

should pay 20 percent of his severance pay as child support. We hold the district court did not abuse its judicial discretion.

Affirmed.