(188 P.3d 32)
No. 98,554

In the Matter of The Marriage of Jamie Lynn Ormiston, now McCabe, *Appellant,* and Alvin F. Ormiston, Jr., *Appellee.*

Opinion filed July 18, 2008. 

*Ross D. Alexander,* of Wichita, for appellant.

*Jeff Griffith,* of Derby, for appellee.

Before Marquardt, P.J., Caplinger and Leben, JJ.

Caplinger, J.: Jamie Lynn McCabe appeals the district court's denial of her motion to increase the child support paid by Alvin Ormiston. McCabe claims the district court erred in relying upon

*In re Marriage of Brand*, 273 Kan. 346, 358, 44 P.3d 321 (2002), to hold that one-time, lump sum cash and stock payments made to Ormiston by his employer are not income under the Kansas Child Support Guidelines (Guidelines).

We conclude *Brand* must be limited to its unique facts and does not stand for the broad proposition that lump sum payments not periodically or regularly received are not included within the definition of "income" under the Guidelines. Further, we remand this case to the district court for an evidentiary hearing to consider whether the payments to Ormiston were in some manner related to the work performed by Ormiston or to his past or current wages. If so, the payments may be included in gross income for purposes of calculating child support.

*Factual and procedural background*

Alvin Ormiston received a one-time cash payment of $34,556 in December 2006 and a one-time stock payment of $26,884 in March 2007 from his employer, Spirit AeroSystems. The payments were made pursuant to a collective bargaining agreement between the International Association of Machinists and Aerospace Workers and Spirit AeroSystems (IAM) following the sale of Boeing's Wichita facility to Onex Corporation, Spirit Aerosystems' parent corporation. McCabe filed a motion to increase the child support paid by Ormiston based upon Ormiston's receipt of the payments. A hearing officer denied the motion, and McCabe appealed the decision to the district court.

Following a hearing, the district court issued a considered and thorough written opinion, reasoning the payments made to Ormiston clearly appeared to come within the broad definition of "income" in the Guidelines. Nevertheless, the district court believed it was constrained by *Brand* to conclude that lump sum payments not periodically or regularly received cannot be considered income for child support purposes. The district court thus affirmed the hearing officer's denial of McCabe's motion to increase child support.

*Discussion*

In this appeal of the denial of her motion, McCabe urges us to distinguish *Brand* on its facts and find the district court erred as a matter of law in concluding the one-time cash and stock payments made to Ormiston by his employer were not income under the Guidelines.

Generally, we review an order modifying child support for abuse of discretion. However, when an issue requires interpretation and application of the Guidelines, our review is unlimited. *In re Marriage of Paul*, 32 Kan. App. 2d 1023, 1024, 93 P.3d 734 (2004), *aff'd* 278 Kan. 808, 103 P.3d 976 (2005).

The Guidelines define "domestic gross income" as "income from all sources, including that which is regularly or periodically received, excluding public assistance and child support received for other children in the residency of either parent." Guidelines § II.D. (2007 Kan. Ct. R. Annot. 108). As the district court aptly noted, the one-time cash and stock payments made to Ormiston appear to fall within this definition.

Historically, Kansas appellate courts have interpreted the definition of "gross income" as it is written—broadly. For instance, in *In re Marriage of Callaghan*, 19 Kan. App. 2d 335, 337, 869 P.2d 240 (1994), we concluded social security disability payments must be included in gross income for purposes of determining the amount of child support. We reasoned:

"[The] term income as it is used within the child support guidelines has been interpreted to mean '*every conceivable form of income*, whether it be in the form of earnings, royalties, bonuses, dividends, interest, maintenance, rent, or whatever.' *In re Marriage of McPheter*, 15 Kan. App. 2d at 48 (quoting 2 Elrod, Kansas Family Law Handbook § 14.024, p. 14-11 [1990])." (Emphasis added.) 19 Kan. App. 2d at 336.

Nevertheless, Ormiston suggests our Supreme Court narrowed the definition of income for child support purposes in *In re Marriage of Brand*, 273 Kan. 346, 358, 44 P.3d 321 (2002). There, the petitioner sought to increase child support from the respondent based on distributions the respondent received from Subchapter S corporations. The district court determined the distributions were

not income and could not be included in the child support calculation.

Significantly, in affirming the district court, our Supreme Court in *Brand* noted that its determination was "highly fact specific." 273 Kan. at 359. Additionally, the court set out several specific factors to be considered when "determining what amount of a Subchapter S corporation's income should be included as income" for purposes of calculating child support, including: (1) the past earnings history of the Subchapter S corporation; (2) the ownership share of the recipient; and (3) the shareholder's ability to control distribution or retention of the net profits of the business. 273 Kan. at 359-60.

*Brand* concluded that the retained earnings and distributions of the Subchapter S corporations in question were not income because the petitioner failed to establish that the respondent manipulated corporate assets, decreased the amount of his salary to increase retained earnings, or acted in a way to shield income. 273 Kan. at 346, 355. Further, the court concluded the historical information regarding respondent's interests supported "the district court's conclusion that the amounts distributed to respondent were for the sole purpose of paying his share of the corporation's taxes and were not available to pay support." 273 Kan. at 356.

Despite this limited and fact-specific determination, Ormiston urges us to rely on the *Brand* court's more general statement that "lump-sum payouts are not income regularly received and thus cannot be considered income for purposes of calculating support." 273 Kan. at 358. However, Ormiston fails to point out that this reference in *Brand* was to a transaction involving the sale of land by a Subchapter S corporation and not to a lump sum payout to a wage earner by his employer. Further, the court in *Brand* appears to have misstated the facts in discussing this lump sum payout. Earlier in the opinion the court noted that although a tract of land was sold by BBBR (a Subchapter S corporation in which the respondent held a 25% interest) and capital gains taxes were paid, *no distributions were paid* to the shareholders as a result of the sale of the tract of land. Thus, *Brand's* subsequent statement regarding "lump sum payouts" appears to be dicta.

Moreover, in discussing lump sum payments, *Brand* relied upon *In Re Marriage of Case*, 19 Kan. App. 2d 883, 891, 879 P.2d 632, *rev. denied* 255 Kan. 1002 (1994), for the proposition that "Kansas courts have already determined that lump sum payouts are not income regularly received and thus cannot be considered income for purposes of calculating support." We do not read *Case* to stand for that broad proposition. See *Brand*, 273 Kan. at 358.

In *Case*, this court affirmed the trial court's finding that lump sum payments received by a husband from his employer in a one-time pension plan buyout were not included for purposes of child support. In so holding, the court noted that the lump sum payments were not per se excluded from consideration. Rather, the payments were made as part of a "bargained for" property division in the previous divorce which the court distinguished from current regular earnings. 19 Kan. App. 2d at 891.

Thus, we conclude *Case* did not hold, as *Brand* suggests in dicta, that lump sum payments are not included in income. In fact, *Case* specifically recognized that "[d]omestic gross income includes 'every conceivable form of income, whether it be in the form of earnings, royalties, bonuses, dividends, interest, maintenance, rent, or whatever.'" 19 Kan. App. 2d at 892 (quoting *In re Marriage of McPheter*, 15 Kan. App. 2d 47, 48, 803 P.2d 207 [1990]).

Further, we note that the *Brand* court's statement in dicta regarding lump sum payouts may have been based upon a misstatement of the Guideline's definition of "domestic gross income." Notably, the court paraphrased the definition of gross income as "income which is regularly and periodically received from any and all sources." 273 Kan. at 353. However, at that time, the Guidelines provided:

"The Domestic Gross Income for the wage earner is *income from all sources*, excluding public assistance and child support received for other children in the custody of either parent. . . .

Income *includes* all income which is regularly and periodically received from any source." (Emphasis added.) Guidelines § II.D. (2002 Kan. Ct. R. Annot. 98-99).

Thus, contrary to *Brand*'s implication, the Guidelines do not *exclude* income that is not regularly and periodically received from

gross income. Rather, they explicitly *include* income that *is* regularly and periodically received.

Ormiston argued in the district court that the definition of domestic gross income was modified in 2003, and he suggested this change was significant to the determination of whether lump sum payments may be included in the recipient's gross income. As stated, prior to 2003, domestic gross income was "income from all sources" and *"included* all income which is regularly and periodically received from any source." (Emphasis added.) Guidelines § II.D. (2002 Kan. Ct. R. Annot. 98-99). Gross income is currently defined as "income from all sources, *including* that which is regularly or periodically received, excluding public assistance and child support received for other children in the residency of either parent." (Emphasis added.) Guidelines § II.D. (2007 Kan. Ct. R. Annot. 108-09). We conclude that this modification to the definition of gross income is grammatical rather than substantive, and the current Guidelines, like the former, do not exclude income that is not regularly and periodically received from gross income calculations.

In summary, we agree with McCabe that *Brand,* which involved retained earnings and distributions from Subchapter S corporation, does not control our determination of whether lump sum payments by an employer to its employee pursuant to a collective bargaining agreement may be included in the employee's income under the Guidelines.

Our distinction of *Brand* is supported by the rationale of this court in *In re Marriage of Branch,* 37 Kan. App. 2d 334, 152 P.3d 1265 (2007). There, we determined the petitioner's lump sum severance payment from his employer fell within the broad definition of income under the Guidelines. 37 Kan. App. 2d at 338. Noting that while a "bonus" payment not regularly received is not income for the purposes of calculating support, the court held that the payment was not a bonus because it compensated the petitioner for lost income. 37 Kan. App. 2d at 337-39 (referencing 2 Elrod & Buchele, Kansas Law and Practice: Kansas Family Law § 14.24, p. 352 [1999]). Significantly, neither the parties nor the court in

*Branch* discussed *Brand,* presumably because *Brand* involved a unique factual situation.

The *Branch* court concluded:

"We hold the definition of income as defined by the Guidelines does encompass [petitioner's] severance pay. As shown by the exhibits, the payment is based upon his wages, showing that it is a benefit from his contract to compensate him for the layoff. Consequently, the payment is not in the nature of a one-time bonus." 37 Kan. App. 2d at 338.

Here, as in *Branch*, we believe the controlling issue is whether the cash and stock payments to Ormiston were compensation for lost income, or were in some manner related either to the work performed by Ormiston or to his former or current wages. However, we are impeded in making this determination by the lack of a record regarding the nature of the payments made to Ormiston.

Although the record contains several references to the fact that the payments to Ormiston were made pursuant to a collective bargaining agreement, we find no specific information regarding the nature of the payments. We note that McCabe suggests in her appeal brief that the payments were made as the result of an understanding between the collective bargaining unit (IAM) and its members that when the company's stock went public, employees would be compensated for a previous wage reduction.

However, no evidence was presented at the district court's hearing on the appeal of the administrative officer's decision, and it does not appear the hearing was scheduled as an evidentiary hearing. McCabe's counsel did reference an IAM website which allegedly established that the one-time payment to Spirit employees was not a bonus. Rather, according to McCabe's counsel, the website stated that IAM members "that [have] endured their industries downturn are now reaping a well deserved share of profits that their sacrifices helped create." Counsel further stated that it was his "understanding" that IAM members took a pay cut as part of the agreement "being that if it goes public then you'll get some of this money back that you've given up." Ormiston's counsel neither commented on nor objected to these assertions.

Moreover, at two points during the hearing, McCabe's counsel offered to put on evidence to establish the nature of the one-time

payment. The district court did not respond to this suggestion, and further discussion among the parties indicated the parties and the court believed the court was presented with a question of law, *i.e.*, whether *Brand* precluded inclusion in gross income of one-time payments not regularly or periodically received.

Because we have found the district court erred in concluding *Brand* precludes inclusion of one-time payments in gross income regardless of the nature of the payment, the appropriate remedy here is to remand the case to the district court for an evidentiary hearing. On remand, the district court is tasked with determining whether the cash and stock payments made to Ormiston were compensation for lost income, or were in some manner related to the work performed by Ormiston or to his former or current wages. If so, the payments may be included in gross income.

Reversed and remanded with directions.

MARQUARDT, J.: I agree with the majority that the district court in this case issued a considered and thorough opinion. However, I disagree with the majority that this case should be remanded to the district court to consider whether a one-time cash payment in 2006 and a one-time stock payment in 2007 to Alvin Ormiston should be considered income for calculating child support.

The Kansas Child Support Guidelines (Guidelines) define "domestic gross income" as "income from all sources, including that which is regularly or periodically received." § II.D. (2007 Kan. Ct. R. Annot. 108). This definition has been interpreted to include " 'earnings, royalties, bonuses, dividends, interest, maintenance, rent, or whatever.' " *In re Marriage of Callaghan*, 19 Kan. App. 2d 335, 336, 869 P.2d 240 (1994). This interpretation only includes income that is regularly and periodically received.

The majority opinion completely overlooks the phrase in the Guidelines that domestic gross income includes all income "which is regularly and periodically received."

Interpretation of the Guidelines affords us unlimited review, as the majority states. See *In re Marriage of Paul*, 32 Kan. App. 2d 1023, 93 P.3d 734 (2004), *aff'd* 278 Kan. 808, 103 P.3d 976 (2005). "However, review of an order setting child support is limited to

determining whether there is substantial competent evidence to support the trial court's findings. Substantial evidence is evidence which possesses both relevance and substance so as to form a basis of fact from which the issues can be reasonably resolved." *In re Marriage of Brand*, 273 Kan. 346, Syl. ¶ 1, 44 P.3d 321 (2002).

In *Callaghan*, the court held that social security disability payments are income as defined by the Guidelines. 19 Kan. App. 2d at 337. Social security disability payments are payments regularly and periodically received.

The Kansas Supreme Court in *Brand* held that corporate retained earnings and distributions of a Subchapter S corporation where Brand was a minority interest shareholder are not income regularly received and cannot be considered as income for purposes of calculating child support. 273 Kan. at 360. The court in *Brand* also referenced *In re Marriage of Case*, 19 Kan. App. 2d 883, 879 P.2d 632, *rev. denied* 255 Kan. 1002 (1994), stating that "Kansas courts have already determined that lump sum payouts are not income regularly received and thus cannot be considered income for purposes of calculating support." 273 Kan. at 358. The *Case* court held:

"Here, the lump sum payments received by Case were one-time buy-out payments. The money received was not relied upon by the parties during the prior marriage. In fact, any potential money received from these sources was bargained away during the property settlement. The trial court could reasonably conclude that the lump sum payments should not be included as domestic gross income when figuring child support." 19 Kan. App. 2d at 892.

The majority claims that its reading of *Brand* is supported by *In re Marriage of Branch*, 37 Kan. App. 2d 334, 152 P.3d 1265 (2007). The *Branch* case involved a severance payment to Branch from his employer. The payment was made to compensate Branch for his layoff. The *Branch* court held that the "payment is not in the nature of a one-time bonus" and was a provision in his employment contract. 37 Kan. App. 2d at 338. In Ormiston's case, he was not being compensated for a layoff. The payments he received in 2006 and 2007 were not regularly and periodically received, and there is no indication that he will ever receive such payments again.

Under the standard of review stated in *Brand,* there is substantial and competent evidence to support the district court's order, and I would affirm that order.