No. 125,862

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

L.F.,
*Appellant*,

and

M.F.,
*Appellee*.

SYLLABUS BY THE COURT

1.

Investigations and reports ordered under K.S.A. 23-3210 may include psychological evaluations of parents conducted for the purpose of determining appropriate legal custody, residency, visitation rights, and parenting time.

2.

Investigations and reports ordered under K.S.A. 23-3210 are not subject to the requirements of K.S.A. 2023 Supp. 60-456 and a *Daubert* hearing is not required to determine their admissibility. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

3.

Realized capital gains which are periodically and regularly received by a parent can be included in that parent's gross income for the calculation of child support under the Kansas Child Support Guidelines.

4.

A parent's use of income to pay their attorney fees does not change the character of the funds from "income" to "non-income" for purposes of calculating child support under the Kansas Child Support Guidelines.

Appeal from Johnson District Court; ERICA K. SCHOENIG, judge. Oral argument held October 15, 2024. Opinion filed January 3, 2025. Affirmed.

*Thomas R. Buchanan*, *Susan B. Galamba*, and *Deborah A. Moeller*, of McDowell, Rice, Smith & Buchanan, of Kansas City, Missouri, for appellant.

*Catherine A. Zigtema*, Zigtema Law Office LC, of Shawnee, for appellee.

Before CLINE, P.J., MALONE and SCHROEDER, JJ.

CLINE, J.: This appeal involves a fact-intensive and emotionally charged divorce case. The parties are familiar with the long history of this case, so we recite only the facts necessary to explain our ruling. Highly summarized, L.F. (Mother) and M.F. (Father), parents of three children, divorced in 2018 and agreed to a parenting plan. They each moved to modify the parenting plan in 2019, accusing each other of multiple types of abuse and poor parenting. At one point, the district court ordered an investigator to conduct psychological evaluations and parenting assessments of the parents under K.S.A. 23-3210. After an evidentiary hearing, the district court issued orders on parenting time and child support, among other issues.

On appeal, Mother challenges the district court's admission of her psychological evaluation at the hearing, as well as its modification of the parenting plan, calculation of child support, and various rulings involving the guardian ad litem (GAL) who was appointed to represent the children's interests in the divorce proceedings. After careful review of the record, we find no error in the court's rulings. As for Father's motion for

2

attorney fees on appeal under Supreme Court Rule 7.07(a)(4) and (c) (2024 Kan. S. Ct. R. at 52), we do not find Mother's appeal was frivolous and therefore deny the motion.

REVIEW OF MOTHER'S APPELLATE CHALLENGES

I. *Did the district court err in ordering and admitting Dr. Prado's psychological evaluations and testimony under K.S.A. 23-3210?*

Before the hearing on the parties' competing motions to modify parenting time, the GAL requested psychological evaluations of the parents to assist his custody investigation. The district court ordered both parents to undergo psychological evaluations and parenting assessments by Dr. Nicole Prado under K.S.A. 23-3210(c) and Johnson County Local Rule 23. The evaluations were completed and submitted to the district court with copies to the parties' attorneys. Mother moved to exclude the evaluations and the supervised parenting reports alleging they were inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), claiming Dr. Prado's methodologies and opinions were flawed and unreliable.

While the district court initially scheduled a *Daubert* hearing, it reconsidered and ruled Dr. Prado's opinions, evaluations, and reports were admissible under K.S.A. 23-3210. The court found K.S.A. 23-3210, as the more specific statute in the family law code, applied over the general rule of evidence found in K.S.A. 60-456. It also noted there was no need for a *Daubert* hearing because K.S.A. 23-3210 allows a party to challenge opinions and reports from court-appointed investigators like Dr. Prado through cross-examination and/or impeachment through other experts.

Mother renews her challenge to the admission of these documents on appeal, along with Dr. Prado's hearing testimony, claiming the district court abrogated its gatekeeping function by failing to hold a *Daubert* hearing. She maintains that K.S.A. 60-

3

456 still applies and the admission of this evidence prejudiced her by influencing the district court's findings on appropriate parenting time.

A. *Standard of review*

Our standard of review of this issue is multifaceted. While a district court's admission of expert testimony is generally reviewed for an abuse of discretion, to the extent interpretation of statutes is required, our review is de novo. *In re Care & Treatment of Cone*, 309 Kan. 321, 325, 435 P.3d 45 (2019). A judicial action constitutes an abuse of discretion if the action is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). And if we find an error in the court's admission of expert testimony, that error "does not warrant reversal unless 'there is a "reasonable probability that the error will or did affect the outcome of the trial in light of the entire record."'" *Castleberry v. DeBrot*, 308 Kan. 791, 812, 424 P.3d 495 (2018).

B. *K.S.A. 23-3210 or K.S.A. 60-456*

The first question we must decide is whether the admission of Dr. Prado's testimony, evaluations, and letters was governed by K.S.A. 23-3210 or K.S.A. 60-456.

K.S.A. 23-3210, the statute concerning investigations in child custody cases, reads:

> "(a) *Investigation and report*. In any proceeding in which legal custody, residency, visitation rights or parenting time are contested, the court may order an investigation and report concerning the appropriate legal custody, residency, visitation rights and parenting time to be granted to the parties. The investigation and report may be made by court services officers or any consenting person or agency employed by the court for that purpose. The court may use the Kansas department for children and

4

families to make the investigation and report if no other source is available for that purpose. The costs for making the investigation and report may be assessed as court costs in the case as provided in article 20 of chapter 60 of the Kansas Statutes Annotated, and amendments thereto.

"(b) *Consultation*. In preparing the report concerning a child, the investigator may consult any person who may have information about the child and the potential legal custodial arrangements. Upon order of the court, the investigator may refer the child to other professionals for diagnosis. The investigator may consult with and obtain information from medical, psychiatric or other expert persons who have served the child in the past. If the requirements of subsection (c) are fulfilled, the investigator's report may be received in evidence at the hearing.

"(c) *Use of report and investigator's testimony*. The court shall make the investigator's report available prior to the hearing to counsel or to any party not represented by counsel. Upon motion of either party, the report may be made available to a party represented by counsel, unless the court finds that such distribution would be harmful to either party, the child or other witnesses. Any party to the proceeding may call the investigator and any person whom the investigator has consulted for cross-examination. In consideration of the mental health or best interests of the child, the court may approve a stipulation that the interview records not be divulged to the parties."

*In re Marriage of Talkington*, 13 Kan. App. 2d 89, 762 P.2d 843 (1988), was one of this court's earlier cases interpreting K.S.A. 60-1615, now K.S.A. 23-3210. The court noted the purpose of this section was to permit "'reports by a neutral investigator'" which "'remove[s] the child custody question from an adversarial fact-finding process.'" 13 Kan. App. 2d at 91 (quoting Maxwell, *In the Best Interests of the Divided Family: An Analysis of the 1982 Amendments to the Divorce Code*, 22 Washburn L.J. 177, 238 [1983]). This section is important, because in adversarial child custody proceedings requiring tremendous amounts of fact-finding, the investigator's "'report can reduce court time because the information is not obtained through in-court testimony.'" 13 Kan. App. 2d at 91 (quoting Maxwell, 22 Washburn L.J. at 238).

In *In re Marriage of Talkington*, a parent objected to the admission of a home study report ordered under K.S.A. 60-1615 on the grounds of hearsay because the investigator did not testify at the custody hearing. While we agreed the report would otherwise be hearsay under the circumstances, we found it was admissible because it met the requirements for admissibility under K.S.A. 60-1615—that is, the report was made available to the opposing party before the hearing. 13 Kan. App. 2d at 92. Relying on the statutory interpretation principle that a more specific statute controls over a general one unless it appears the Legislature intended otherwise, we found that in child custody hearings the provisions of K.S.A. 60-1615 governing admissibility of reports supplanted the evidentiary rules in the hearsay statute, K.S.A. 60-460. 13 Kan. App. 2d at 91-92. We noted the objecting parent had the right under K.S.A. 60-1615 to call the investigator who prepared the home study to testify. And we found if that parent wanted to cross-examine the preparer, he should have subpoenaed the preparer as a witness or taken his testimony by deposition. 13 Kan. App. 2d at 92.

On the other hand, K.S.A. 2023 Supp. 60-456, the statute concerning witness testimony in civil proceedings, reads:

> "(a) If the witness is not testifying as an expert, the testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds: (1) Are rationally based on the perception of the witness; (2) are helpful to a clearer understanding of the testimony of the witness; and (3) are not based on scientific, technical or other specialized knowledge within the scope of subsection (b).
> "(b) If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if: (1) The testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case."

6

K.S.A. 60-456(b) effectively adopted the test found in *Daubert*. Under *Daubert*, the Court determines the reliability of proposed scientific testimony by looking to factors such as (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. 509 U.S. at 592-94. But these four factors are not a "'definitive checklist or test'" and a court's gatekeeping inquiry into reliability must be "'tied to the facts' of a particular 'case.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). K.S.A. 60-456(b) is substantively identical to Federal Rule of Evidence 702.

The "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. As Mother contends, *Daubert* requires the court to act as a gatekeeper for the admission of expert testimony. 509 U.S. at 596. But "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain "the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596. In short, "[t]he *Daubert* factors are simply a way of distinguishing 'between science and pseudo-science.'" *Hyman & Armstrong, P.S.C. v. Gunderson*, 279 S.W.3d 93, 104 (Ky. 2008). A district court most commonly fulfils its gatekeeping role regarding challenged expert testimony by conducting a *Daubert* hearing. *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

Mother contends the district court abrogated its gatekeeping role by failing to assess Dr. Prado as an expert under *Daubert* and K.S.A. 2023 Supp. 60-456. But Father argues K.S.A. 2023 Supp. 60-456 does not apply because K.S.A. 23-3210 controls.

1. *K.S.A. 23-3210 can be used to order psychological evaluations of parents.*

Mother argues K.S.A. 23-3210 only provides authority for mental health evaluations of a child, not their parents. But district courts have used K.S.A. 23-3210 (or its predecessor K.S.A. 60-1615), to order psychological evaluations of parents, companions of parents, and children in contested child custody proceedings. See *In re Marriage of Talkington*, 13 Kan. App. 2d at 90 (noting the district court ordered a mental health evaluation of the mother under K.S.A. 60-1615). And in *Watchous v. Jensen*, No. 70,382, 1994 WL 17120393 (Kan. App. 1994) (unpublished opinion), this court considered whether the district court committed reversible error by accepting and relying upon certain psychological evaluations without giving the parties notice of the reports. The district court ordered full psychological evaluations of the parents, children, and companion of one of the parents. We found the evaluations admissible under K.S.A. 60-1615 because they were made available to the parties' counsel before the hearing, which is all the statute requires. 1994 WL 17120393, at *3.

Similarly, in *In re Marriage of Block*, No. 70,143, 1994 WL 17120582 (Kan. App. 1994) (unpublished opinion), the district court ordered an expert to conduct a psychological evaluation under K.S.A. 60-1617, now K.S.A. 23-3510. This statute permits the district court to appoint a "professional trained in family counseling to determine if it is in the best interests of the parties' children that the parties and any of the children have counseling regarding custody and visitation matters." 1994 WL 17120582, at *5. The mother argued "the trial court improperly used Dr. Johnson in dual roles as the clinical psychologist who evaluated the parents and child under K.S.A. 1993 Supp. 60-1617 and as the child custody investigator under K.S.A. 60-1615." 1994 WL 17120582, at *6. This court disagreed with the mother. It found there was "no conflict between the role of a psychological expert under K.S.A. 1993 Supp. 60-1617 and the role of a child custody investigator under K.S.A. 60-1615." 1994 WL 17120582, at *6. It then held:

"Neither statute prohibits an *expert* from serving in both capacities and, as demonstrated in this case, the roles overlap." (Emphasis added.) 1994 WL 17120582, at *6. Here, the district court did not order a counseling determination under K.S.A. 23-3210. But like *In re Marriage of Block*, it did order Dr. Prado to act as a child custody investigator under that statute.

Mother relies on one sentence in K.S.A. 23-3210(b)—which she reads out of context—to conclude that this statute only allows for evaluation of a child. She contends that since the statute only permits the child custody investigator to "refer the *child* to other professionals for diagnosis," this means the investigator cannot evaluate the parents. (Emphasis added.) K.S.A. 23-3210(b). But this reading ignores the statute's purpose and the context for that sentence.

To begin, the purpose of K.S.A. 23-3210 is to authorize an "investigation and report concerning the appropriate legal custody, residency, visitation rights and parenting time to be granted to the parties." K.S.A. 23-3210(a). Dr. Prado testified she conducted her psychological evaluation to diagnose any mental health symptoms which impacted the parties' parenting and coparenting abilities. As in *Watchous*, the psychological evaluations of the parents here were ordered for the purpose of determining the most beneficial custodial arrangement for their three children. 1994 WL 17120393, at *2.

Next, Mother's reading of the sentence allowing an investigator to refer a child for diagnosis also takes it out of context. The scope of the investigation under the statute— both who can conduct it and what type of information can be gathered—is quite expansive. First, the statute specifies: "The investigation and report may be made by court services officers or *any consenting person or agency employed by the court for that purpose*." (Emphasis added.) K.S.A. 23-3210(a). And it allows an investigator to "consult *any* person who may have information about the child and the potential legal custodial arrangements." (Emphasis added.) K.S.A. 23-3210(b). This includes the power to

9

"consult with and obtain information from medical, psychiatric or other expert persons who have served the child in the past." K.S.A. 23-3210(b). By allowing the investigator to also obtain a professional diagnosis of the child, the Legislature empowered the investigator to fill any gaps in information that may exist, not restrict the investigator's authority.

The statutory designation of this authority also protects the investigator from what may otherwise be seen as an invasion of the child's privacy or medical privileges. In *Werner v. Kliewer*, 238 Kan. 289, 296, 710 P.2d 1250 (1985), which was an invasion of privacy case, the Kansas Supreme Court held a mother's medical privilege under K.S.A. 60-427 was waived and overridden by K.S.A. 60-1610(a)(3)—a statute requiring courts to consider the best interests of the child in custody proceedings—when the court needed to determine mother's fitness to have custody of the children in a divorce proceeding. See also *In re Marriage of Kiister*, 245 Kan. 199, Syl. ¶ 2, 777 P.2d 272 (1989) ("In determining visitation rights, the court's paramount concern is the best interests of the child. This concern outweighs the parent's right of confidentiality in medical and psychological counseling records."). By authorizing the investigator to refer the child for a medical diagnosis, the statute appears to override the *child's* statutory medical privileges and privacy. See Comment g to the Principles of the Law of Family Dissolution: Analysis and Recommendations § 2.13 (Am. Law Inst. 2002) (statutes like K.S.A. 23-3210(b) "explicitly provide[s] for waiver of otherwise applicable statutory privileges, in cases involving custody of children"). Again, we read this language to expand the investigator's authority rather than contract it.

Finally, Mother argues for the first time on appeal that the district court can only order parental evaluations under K.S.A. 2023 Supp. 60-235. This statute provides the court where the action is pending "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." K.S.A. 2023 Supp. 60-235(a)(1). And there is a section in the

10

Kansas Family Law Code which discusses K.S.A. 2023 Supp. 60-235: Under K.S.A. 23-3218(a), "the court may change or modify any prior order of custody, residency, visitation and parenting time, when a material change of circumstances is shown." More pertinently, it also provides: "The court may order physical or mental examinations of the parties if requested pursuant to K.S.A. 60-235, and amendments thereto." K.S.A. 23-3218(b).

Since Mother failed to make this argument to the district court, it is unpreserved for our review. See Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). We also note that she provides no analysis to support her claim that K.S.A. 2023 Supp. 60-235 is the only way a court can order a mental health evaluation of a parent in a child custody proceeding. The court ordered the psychological evaluation and parenting assessments here under K.S.A. 23-3210, not K.S.A. 60-235, so we limit our discussion to whether district courts are required to apply K.S.A. 2023 Supp. 60-456 before admitting opinions and reports of investigations conducted under K.S.A. 23-3210. And we note the scope of Dr. Prado's charge from the district court was broader than simply providing a mental health evaluation like the kind authorized by K.S.A. 2023 Supp. 60-235. That is, in addition to conducting psychological evaluations of both parents, Dr. Prado was asked to complete a parenting assessment. During that assessment, Dr. Prado consulted several third parties, as contemplated by K.S.A. 23-3210(b). Such consultations do not appear to be involved—or are at least not mentioned—in an independent mental health examination conducted pursuant to K.S.A. 2023 Supp. 60-235.

> 2. *K.S.A. 23-3210 applies to the type of evaluation the parents were ordered to undergo by Dr. Prado.*

Mother next argues the district court incorrectly relied on K.S.A. 23-3210 to admit Dr. Prado's opinions and report because Mother says the statute only allows for a

11

"custody evaluation," and Dr. Prado admitted she did not conduct a custody evaluation. But Mother reads both the statute and the scope of Dr. Prado's work too narrowly.

First, K.S.A. 23-3210 does not limit an investigator's report to a custody evaluation. It more generally permits the report to "concern[] the appropriate legal custody, residency, visitation rights and parenting time to be granted to the parties." K.S.A. 23-3210(a). Indeed, the title of the statute is: "Information relating to custody or residency of children; visitation or parenting time with children."

Next, even though Dr. Prado testified she did not conduct a custody evaluation, she did testify that she was asked to do a "parenting assessment." And she testified the psychological evaluation she conducted was meant to "determine and understand the mental health components impacting the parties functioning, globally, the impacts they may have on their parenting ability, and the impacts any mental health conditions they have on their ability to effectively coparent." She explained how she consulted third parties working with the children "to determine how [the parents] were interacting with the children." She also discussed how her psychological evaluations are meant to diagnose mental health symptoms "that are negatively impacting the person[']s functioning and potentially their coparenting relationship," which would be directly related to decisions about the appropriate legal custody, residency visitation, and parenting time to be granted.

The purpose of Dr. Prado's report was to examine Mother and Father's parenting ability and capacity to coparent, both of which would help the district court determine the appropriate parenting time. Therefore Dr. Prado's evaluations qualify as a report under K.S.A. 23-3210.

12

3. *Requiring a* Daubert *hearing and application of K.S.A. 2023 Supp. 60-456 to reports issued under K.S.A. 23-3210 is unnecessary and impractical.*

Mother also contends that even if K.S.A. 23-3210 authorizes reports such as Dr. Prado's, it does not mandate their admission. That is, she maintains the district court is still required to determine the admissibility of investigatory reports in child custody proceedings under K.S.A. 2023 Supp. 60-456 for the court to fulfill its gatekeeping role to ensure the evidence is reliable. She cites no legal authority for this proposition—she simply notes K.S.A. 23-3210(b) states an ordered report "*may* be received in evidence at the hearing." (Emphasis added.) That is, it does not "automatically" allow for admission of the report but simply permits the court to do so. She believes because the statute makes the admission of the report permissive, this means the Kansas Legislature intended the *Daubert* standard to still be applied.

But Mother does not offer any statutory language or legislative history showing the Legislature considered *Daubert* in passing this law or when it passed amendments to the law. A more reasonable interpretation would be that the Legislature used the word "may" so as not to eliminate objections based on relevance to the issues to be tried at the hearing. And Mother lodged no such objection to Dr. Prado's report.

Moreover, as the district court pointed out, a *Daubert* hearing would be redundant since the procedure for testing reliability of the evidence is already in the statute. It explained that K.S.A. 23-3210 allows a party the full ability to challenge the report and present testimony about why the investigator's findings are invalid or problematic. Indeed, the court noted in the pretrial order that Dr. Prado's evaluations and reports were "admitted pursuant to K.S.A. 23-3210, subject to further evidence disputing any findings or recommendations, and subject to cross-examination and/or impeachment of the preparer or consultant of the preparer."

13

Father also points out the Family Law Code specifies that general rules of evidence apply in domestic proceedings unless superseded by specific provisions. K.S.A. 23-2104; K.S.A. 60-402. And we relied on a similar rule of statutory interpretation in *In re Marriage of Talkington* to find the general evidentiary rules governing hearsay do not apply to reports ordered under K.S.A. 23-3210. 13 Kan. App. 2d at 92-93. This rule equally supports our conclusion that, like hearsay and K.S.A. 2023 Supp. 60-460, *Daubert* and K.S.A. 2023 Supp. 60-456 also do not apply to such reports.

The plain text confirms the Legislature intended K.S.A. 23-3210 reports to be admitted if the procedural safeguards in subsection (c) are met. Neither Mother nor Father dispute subsection (c) was met in this case. Since subsection (c) was met, like it was in *In re Marriage of Talkington*, the district court had the authority to accept the report into evidence.

Finally, both Father and the district court also point out: "The provisions of the Kansas family law code shall be construed to secure the just, speedy, inexpensive and equitable determination of issues in all domestic relations matters." K.S.A. 23-2102. As already mentioned, and acknowledged by Mother, the goal of K.S.A. 23-2310 is to receive "reports by a neutral investigator [which] remove the child custody question from an adversarial fact-finding process. . . . The report can reduce court time because the information is not obtained through in-court testimony." *In re Marriage of Talkington*, 13 Kan. App. 2d at 91. Mother even notes K.S.A. 23-3210's "sole rationale is to speed trial and to save expense by obviating the need for additional testimony to counter hearsay." Dr. Prado filled the role of an investigator who helped speed the trial along because she was charged with providing insight into Mother and Father's parenting abilities after her evaluation. This saved the district court many hours of listening to more witnesses from both sides, including some whom Dr. Prado consulted. Although the court eventually held Dr. Prado's testimony was "successfully" challenged by Mother through Mother's experts, that does not diminish the statute's purpose.

14

4. *Mother's attempt to distinguish caselaw relied on by the district court is unpersuasive.*

Mother next argues the district court improperly relied on *In re Marriage of Talkington*, 13 Kan. App. 2d. 89 and *Smart v. BNSF Railway Co.*, 52 Kan. App. 2d 486, 496-97, 369 P.3d 966 (2016), in admitting Dr. Prado's reports. Mother argues *In re Marriage of Talkington* "evaluated only whether hearsay would preclude the admission of reports and . . . made no analysis of whether the . . . expert opinion is admissible." This is a fair conclusion. We made no ruling on the interplay of expert testimony and K.S.A. 60-1615 in *In re Marriage of Talkington*. But as explained earlier, our reasoning there is still analogous because we addressed application of a general rule of evidence in the specific context of a child custody case.

Mother also posits *In re Marriage of Talkington*'s reasoning does not apply because its hearsay rule comes with procedural safeguards. She states that even when a court-appointed reporter under K.S.A. 23-3210 does not testify, *In re Marriage of Talkington* permits the report to be entered into evidence, even with hearsay statements, because it still allows cross-examination of the hearsay declarant "whom the investigator has consulted." K.S.A. 23-3210(c). Mother thus believes even when an investigator does not testify, there is still an "avenue to ensure the admitted hearsay testimony is reliable."

But the same is true for cross-examining the investigator's credentials, investigatory methodology, and conclusions. Mother can and did challenge Dr. Prado's report through cross-examination. See K.S.A. 23-3210(c). She also was permitted to and did present expert testimony to discredit Dr. Prado's report. See *In re Marriage of Block*, 1994 WL 17120582, at *6 (stating parties "present[] expert testimony to substantiate" their problems with the investigator's opinions). The cross-examination of Dr. Prado and testimony of her own expert ensured Mother had an opportunity to challenge the reliability of Dr. Prado's report.

15

Mother further contends the district court improperly relied on *Smart*, 52 Kan. App. 2d at 496-97. But the record citation Mother provides (the first page of the parties' pretrial order) does not support her contention since it does not discuss *Smart*, nor could we find any mention of *Smart* elsewhere in the pretrial order. The only case the court cited in the pretrial order when it held Dr. Prado's reports were admissible under K.S.A. 23-3210 was *In re Marriage of Talkington*, 13 Kan. App. 2d at 93.

For these reasons, we do not find the district court erred in admitting Dr. Prado's testimony, evaluations and assessment, and parenting time reports under K.S.A. 23-3210.

> 5. *Mother was not prejudiced by the district court's decision to admit Dr. Prado's report under K.S.A. 23-3210 because the district court stated that Mother "successfully" challenged that evidence.*

Even if we found the district court erroneously admitted Dr. Prado's reports and testimony, we are not persuaded the admission prejudiced Mother. While Mother contends Dr. Prado's unreliable opinions and report influenced the district court's decision, the court specifically said it gave "little weight to Dr. Prado's reports, and found [Mother's] evidence, including her expert witnesses, to be compelling." The court also noted "[s]cant evidence" was presented relating to Dr. Prado's parenting time reports, and it specifically noted it "did not find those reports to be helpful in reaching its decision."

We are not persuaded by Mother's request that we disbelieve the district court. As the court noted when it denied Mother's motion to amend the judgment: "This is not a jury-tried case, and the Court appropriately weighed the evidence related to Dr. Prado's reports and [Mother]'s two experts. [Mother] was not denied the opportunity to challenge Dr. Prado's findings, and in the Court's mind, successfully did so." Generally, "[w]hen a trial court acts as the finder of fact, it is presumed to have considered only legal, competent, and admissible evidence." 75b Am. Jur. 2d, Trial § 1585. That "presumption is overcome only when there is an indication that the court did give some consideration to

16

inadmissible evidence or evidence that should have been excluded." 75b Am. Jur. 2d, Trial § 1585. When there is a bench trial, "the harm caused by evidentiary error is lessened, and an appellate court will reverse only when the trial court's judgment has apparently or obviously been infected by erroneously admitted evidence." 5 Am. Jur. 2d, Appellate Review § 660.

This court has found it persuasive when a district court judge, acting as a fact-finder, conveys on the record that alleged erroneously admitted evidence was unimportant to the final judgment. In *State v. Clingerman*, 63 Kan. App. 2d 682, 688, 536 P.3d 892 (2023), Clingerman argued "that the inclusion of [an officer's] unsworn testimony tainted the trial court's view of the evidence during the bench trial." In denying Clingerman's new trial motion the magistrate judge stated: "But even if the Court were to find that his oath was not sufficient, and that his testimony cannot be relied upon, there is still ample evidence from the other witnesses that this crime was committed, beyond a reasonable doubt." 63 Kan. App. 2d at 689. This court found:

> "In most cases, appellate courts reviewing for harmless error do not have the benefit of the fact-finder explicitly outlining which evidence was more persuasive and which evidence was less useful in arriving at a verdict.
> . . . .
> "Most harmless error review does not have the benefit of such explicit statements from the finder of facts. Here, the record provides the unusual benefit of having the fact-finder, the magistrate judge, explicitly state on the record the rationale behind the conviction and which evidence was most relevant to her factual conclusion. We know directly from the record that [the officer's] testimony—whether erroneously admitted or not—did not affect the verdict. Because there is no reasonable possibility that the error, if any, affected the verdict, we conclude that this is an independent alternative ground for affirming this decision. [Citations omitted.]" 63 Kan. App. 2d at 689-90.

The same is true here. The district court specified that it gave little weight to Dr. Prado's testimony and reports and found that Mother's expert testimony successfully

17

challenged Dr. Prado's findings. Like *Clingerman*, this record provides the unusual benefit of having the fact-finder, the district court judge, explicitly state on the record that the alleged erroneously admitted evidence had little weight in her factual conclusion. So even if Dr. Prado's testimony and report were erroneously admitted, we find there is no reasonable possibility that the alleged error affected the district court's judgment.

We decline to reverse the district court's order or to remand the matter for a new trial based on its admission of Dr. Prado's testimony and reports.

II. *Did the district court err in its division of parenting time?*

Mother next argues the district court erred in its division of parenting time between the parties. She claims the evidence does not support the factual findings on which the court based its division. Specifically, she contends the district court: (1) made no finding that Father was untruthful, (2) gave insufficient weight to Father's history of domestic violence; and (3) gave too much weight to evidence of Mother's alcohol abuse.

Review of child custody arrangements is subject to an abuse of discretion standard. See *State, ex. rel. Secretary, DCF v. M.R.B.*, 313 Kan. 855, 862, 491 P.3d 652 (2021). And to the extent we must review the district court's factual findings, we examine whether they are supported by substantial competent evidence. See *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017); *Harrison v. Tauheed*, 292 Kan. 663, 674, 256 P.3d 851 (2011).

A district court abuses its discretion: "(1) when no reasonable person would take the view adopted by the district court; (2) when a ruling is based on an error of law; or (3) when substantial competent evidence does not support a district court's finding of fact on which the exercise of discretion is based." *Cheney v. Poore*, 301 Kan. 120, 128, 339 P.3d

1220 (2014). Mother bears the burden of demonstrating the district court abused its discretion. *Harsch v. Miller*, 288 Kan. 280, 293, 200 P.3d 467 (2009).

Mother largely asks us to reweigh evidence and make credibility determinations, which we cannot do. *M.R.B.*, 313 Kan. at 863-64. We must defer to the district court's credibility assessments because, unlike this court, the district court personally observed all the witnesses. *Cresto v. Cresto*, 302 Kan. 820, 839, 844, 358 P.3d 831 (2015). And district courts are in the best position to evaluate testimony of witnesses, unlike this court, which is presented with only a paper record. *State v. Schaefer*, 305 Kan. 581, Syl. ¶ 7, 385 P.3d 918 (2016); *M.R.B.*, 313 Kan. at 863-64.

Mother offers no proof the district court failed to assess Father's credibility other than that the court did not write about Father's credibility in its journal entry. But there is no legal requirement that it do so. As Father correctly notes, we presume the district court made all factual findings required to support its judgment, which necessarily includes credibility determinations on contested matters. *State v. Goff*, 44 Kan. App. 2d 536, 540-41, 239 P.3d 467 (2010). Mother has failed to persuade us that the district court did not assess the credibility of all witnesses when making its factual findings on the division of parenting time.

Mother also asks us to believe her version of several events over Father's, but while the court made no explicit finding about Father's credibility, it did find that "Mother's credibility . . . is questionable," particularly when the children's negative reports of Mother were corroborated by the other siblings and their individual therapists.

We also find the district court properly considered Father's history of domestic abuse in determining parenting time, as it is required to do under K.S.A. 23-3203(a)(9). The court found Mother was a victim of Father's domestic abuse, including physical and emotional abuse. Indeed, the court made findings addressing past and present abuse by

the parties against each other and abuse affecting the children. But the court found that Father's abusive actions towards Mother stopped in 2015, and Father had not been abusive to the children since the divorce, while it found Mother, on the other hand, has engaged in alcohol abuse and physical violence towards the children after the divorce. With both parents having a history of abusing each other, the district court took the reasonable action of putting more weight towards the parents' present behavior, instead of disproportionately weighing abuse that occurred before the divorce. In context of evaluating the parties' domestic abuse, the district court did not abuse its discretion in noting both parties have a history of domestic abuse and choosing to evaluate their individual *present* behaviors.

The district court found Father's abuse was directly related to his alcohol abuse, and he testified he stopped drinking after his arrest in 2015 for domestic violence against Mother. While Mother argues the district court erred in "relyi[ng] heavily on [Father's] version of events," she offers no evidence to dispute the events other than her assertion that Father is dishonest. Mother offered no evidence of Father's current alcohol abuse, testifying she "ha[d] no idea" if Father was drinking again. On the other hand, Father successfully completed his probation early for the misdemeanor with no indication of alcohol concerns on probation. Father's undisputed testimony is both relevant to domestic abuse and furnishes a substantial basis of fact. And Mother points to no conflicting evidence the court should have relied on.

As for the district court's findings about Mother's drinking, Mother is right that her Soberlink tests largely show she tested negative for alcohol consumption. Yet other evidence supports the district court's conclusion that Mother engaged in alcohol abuse. In a social worker's supervised parenting time log, it stated that in Mother's house on July 25, 2020, a "social worker noticed alcohol bottles in the cabinet, including a Smirnoff bottle and another bottle." The district court also listened to the children's reports of Mother's drinking and her behaviors, as presented by the GAL. For example,

20

one child reported in December 2019 that Mother drinks "most days." Mother, according to the child, would smell like alcohol and act "weird." Mother would hide her drinking by placing wine in Gatorade bottles, hiding alcohol in tumblers, drinking late at night, and hiding vodka bottles in the laundry room. And the children reported that while Mother was drinking, she was "mean," "annoying," would "bump into walls," and would be "angry."

Even if Mother is correct that she stopped abusing alcohol sometime in 2020, as demonstrated by Soberlink tests, that does not mean the district court abused its discretion in dividing the parties' parenting time. The GAL reported other domestic abuse behaviors Mother engaged in. Mother would become angry with the children for disclosing things to the GAL, telling them they "would have to go to an orphanage if they didn't stop talking to [the GAL]" about her and "ratt[ing]" her out. Mother was consistently engaging in erratic and confrontational behavior according to the children.

Mother also engaged in a physical altercation with one of the children. In February 2020, Mother overpowered the child physically, chased and held the child down, and was "overly physical" with the child. Mother, a tae kwon do instructor, was on top of the child and asked another present child to video the altercation. Police were called. Mother was known as a bully, mean, and picked on the children repeatedly. This evidence is another indication of abusive behavior towards the children, that occurred after the divorce, and supports the court's parenting time findings.

The district court analyzed relevant factors under K.S.A. 23-3203 and expressed concerns about: Mother's behavior towards the children; two of the children's frustrations with the current 50/50 parenting plan, including one child specifically sharing she would prefer more time with Father; Mother's struggles with meeting the children's emotional and physical needs including a failure to ensure the children are fed and attend school on time; Mother's physical abuse towards the children; the negative effect of Mother's

21

roughly 50% parenting time on a child's school behavior; Mother dictating how the therapists should do their jobs; Mother's continued disparaging of Father when the children are with Mother; the chaos of Mother's house; Mother and Father's domestic abuse of each other and the children; Mother's alcohol abuse; and Mother's inability to maintain the children's schedules for school and activities.

The district court's detailed findings are supported by evidence presented at the hearing, so we therefore find it did not abuse its discretion in its parenting time decisions.

III. *Did the district court properly assess GAL fees between the parties and deny Mother's posthearing motion for additional discovery?*

Mother next challenges posthearing rulings by the district court "denying additional discovery and dividing GAL fees between the parties." She cites the district court's order granting the GAL's posthearing request for fees over Mother's objection in support of both points. But this order only addresses the GAL fees, it does not address any additional discovery. Mother claims she sought to reopen discovery of all communications between Father and/or his counsel and the GAL, and Dr. Prado to investigate the GAL's alleged collaboration between the GAL and Father. She also claims she sought to subpoena documents and a deposition from Dr. Prado. She provides no citation for her request for this discovery or an accurate citation to the record for the district court's ruling on that request, in violation of Rule 6.02(a)(5). Our independent review of the record located a transcript of a hearing denying Mother's request, which Father cited as well. In denying the request, the district court stated it had ruled on the substantive issues involved in the case and had denied Mother's motion to alter or amend. The court found it did not need more information from Dr. Prado on and after those rulings.

22

As for the GAL's request for fees, Mother contends the GAL failed to properly perform his duties and, according to the GAL's time records submitted after the hearing, improperly collaborated with Father. She contends the GAL failed to present evidence favorable to Mother at the hearing and acted as Father's "joint defense counsel." And Mother contends the court erred in denying her request for additional discovery because she contends this discovery will support the alleged collusion between Father and the GAL. Mother asks us to remand the case to the district court with instructions to "permit the requested post-trial discovery to ascertain the extent of collaboration, its potential impact on the presentation of facts and make new findings based upon a complete record." She also asks us to order Father to pay all the GAL fees and expenses.

A. *Standard of review*

To the extent Mother challenges the district court's findings of fact and conclusions of law related to the GAL's representation of the children's best interests, those decisions are reviewed for substantial competent evidence and de novo, respectively. *Gannon*, 305 Kan. at 881; see also *In re Marriage of Bergmann & Sokol*, 49 Kan. App. 2d 45, 47, 305 P.3d 664 (2013) ("The issue of GAL fees involves findings of fact and issue of law creating a mixed standard of review."). And we review a district court's ruling on a posttrial or posthearing discovery request under an abuse of discretion standard of review. *State v. Gutierrez*, No. 119,849, 2019 WL 4553478, at *1 (Kan. App. 2019) (unpublished opinion); see *City of Mission Hills v. Sexton*, 284 Kan. 414, 421, 160 P.3d 812 (2007).

B. *We see no error in the district court's assessment of GAL fees.*

Mother's arguments are largely based on inflammatory accusations against the GAL which are largely void of any record citations to support the claims. We find there

is substantial evidence in the record to support the district court's findings in support of its assessment of fees.

Under Kansas Supreme Court Rule 110A(c)(1) (2024 Kan. S. Ct. R. at 192), a GAL must:

"(1) *Conducting an Independent Investigation.* A guardian *ad litem* must conduct an independent investigation and review all relevant documents and records, including those of social service agencies, police, courts, physicians, mental health practitioners, and schools. Interviews—either in person or by telephone—of the child, parents, social workers, relatives, school personnel, court-appointed special advocates (CASAs), caregivers, and others having knowledge of the facts are recommended. Continuing investigation and ongoing contact with the child are mandatory."

Mother believes the GAL ignored his duties and responsibilities under this statute because he did not act in the best interests of the children when he worked with Father's counsel. According to Mother, the GAL and Father's counsel worked together to prepare for the hearing and prepare witnesses like Dr. Prado and colluded together to make biased recommendations towards Father.

The district court recognized the GAL and Father met three times before the hearing. It stated: "The Court has reduced [Mother]'s one-half portion of the GAL fees due and owing by $3,630. The Court is requiring [Father] to pay this amount because the time entries for dates 4/21/2022, 4/29/2022, and 5/02/2022, indicate that the GAL conferenced with [Father]'s attorneys on those dates for trial preparation." The court did not mention any "collusion" between the GAL and Father and did not conclude the GAL "picked sides" with Father because the GAL was "biased." It did, however, acknowledge that Mother wanted Father to pay all fees incurred by the GAL and found "the GAL's

advocacy in this case complies with his 'duties and responsibilities' enumerated in Kansas Supreme Court Rule 110A."

Father points out that a GAL, under Rule 110A must conduct an "independent investigation." The rule does not say the GAL must be "impartial." And Father correctly asserts that Mother is not entitled to have the GAL present favorable evidence of Mother. See Rule 110A.

GALs must review a variety of documents and conduct interviews with various sources. Rule 110A(c)(1). A GAL's purpose is to determine the best interests of the child and represent those interests in court through "vigorous[] advoca[cy]." Rule 110A(c)(3)(E) (2024 Kan. S. Ct. R. at 192). Here, before the hearing, the GAL submitted a proposed parenting plan he believed best served the best interests of the children. Father sent Mother written notice that he intended on asking the court to follow the GAL's proposed plan.

GALs must vigorously advocate for the best interests of the child. This means they must represent those interests in a partisan way. If the GAL determines it is in the best interests of the child to reduce parenting time with Mother, then the GAL has a duty to advocate for that position through: "(i) calling, examining, and cross-examining witnesses; (ii) submitting and responding to other evidence; and (iii) making oral and written arguments based on the evidence that has been or is expected to be presented." Rule 110A(c)(3)(E) (2024 Kan. S. Ct. R. at 192). If the GAL determines the best interests of the children are for Father to receive more parenting time, it is the responsibility of the GAL to vigorously advocate for that position at the hearing. Consequently, that position will inherently line up with Father's position if Father also seeks to receive more parenting time.

In sum, the GAL did not err by making a set of independent recommendations, in the best interests of the children, that Father chose to join. Nor was it improper for the GAL to meet with Father after the GAL had made his assessments to prepare to present the best case to support those assessments at the hearing.

The district court ordered GAL's fees to be split among Mother and Father. And it ordered Father to pay GAL's fees for the 13.2 hours the GAL spent with Father over three days discussing preparation for the hearing. It stated:

> "As the Court has already found, the conduct of both parties has contributed to the litigation and court orders entered in this case. No persuasive evidence has been presented to support a finding that Father should have to pay a larger portion of the GAL fees than Mother. The Court continues to find, based upon all information available and previously presented, that Mother is capable of paying, and has sufficient resources to be able to pay, one-half of the GAL fees incurred, including witness fees, subject to the exceptions stated herein."

Mother now argues: "Because [the] GAL crossed the line and became more akin to an advocate for [Father], [Mother] should not be forced to pay any of the GAL's trial preparation fees and expenses."

Since Mother fails to present evidence supporting her claim that the GAL improperly colluded with Father, there is no basis for concluding the district court erred in requiring her to pay a fair share of the GAL fees. Indeed, the reasonability of the district court is further demonstrated by its careful consideration of the 13.2 hours the GAL spent with Father's counsel in preparation for the hearing. The district court stated, "after considering the equities involved," Mother's portion should be reduced so she did not have to pay for the GAL's time meeting with Father's counsel. It was reasonable for the district court to require Father to pay the fees that were linked to the GAL meeting his counsel. It was not unreasonable to require Mother to pay half of those remaining fees.

26

C. *We see no error in the district court's decision not to reopen discovery.*

Mother contends the GAL's bias has two implications:  First, that discovery needs to be reopened so the collusion between the GAL and Father can be explored, and second, Father should have paid GAL's fees entirely. Given that Mother's accusations about the GAL colluding with Father are unsubstantiated, and we see no error in splitting the GAL's fees between the parties, we also see no error in the district court's decision not to allow Mother to pursue discovery after the hearing on this issue.

We therefore affirm the district court' decision to deny Mother's motion for additional discovery.

IV. *Did the district court err in calculating the gross incomes of Mother and Father to determine child support?*

Mother argues the district court erred in calculating both parties' gross incomes. She contends her realized capital gains should not be included in her gross income. And she argues the district court should not have deducted depreciation from Father's income or have awarded him health insurance credit.

A. *Standard of review*

We review de novo a district court's interpretation and application of the Kansas Child Support Guidelines (2024 Kan. S. Ct. R. at 101). Because Mother's appeal of the district court's interpretation of her gross income turns on the meaning of "gross income" under the Guidelines, we review that challenge de novo. *In re Marriage of Dean*, 56 Kan. App. 2d 770, 773, 437 P.3d 46 (2018).

B. *Mother's gross income should include her realized capital gains.*

The district court included realized capital gains in both parties' gross incomes for child support purposes, using a two-year average based on their tax returns and other supporting documents admitted as exhibits. Mother argued the district court should exclude her capital gains as income because the withdrawals from her investment accounts were used to pay her litigation expenses. But the court found it legally could not consider how Mother used her income in calculating her gross income, citing *In re Marriage of Matthews*, 40 Kan. App. 2d 422, 429, 193 P.3d 466 (2008). And factually it found Mother's part-time wages and yearly dividends did not cover her claimed monthly expenses, and the evidence presented at the hearing supported the finding that Mother regularly received income from sources other than her part-time job and yearly dividends.

On appeal, Mother argues the district court erred by including her realized capital gains in her gross income. She argues these gains were generated from the sale of assets set aside to her in the divorce action, and thus, according to *In re Marriage of Case*, 19 Kan. App. 2d 883, 891, 879 P.2d 632 (1994), and *In re Marriage of Dimond*, No. 98,855, 2008 WL 3369094 (Kan. App. 2008) (unpublished opinion), cannot be included in her gross income. She contends these cases hold income earned from the liquidation of assets obtained as property division are not regular earnings and should not be considered income for calculating child support. But these cases are not analogous nor does Mother properly describe them.

As we noted in *In re Marriage of Ormiston*, 39 Kan. App. 2d 1076, 1080, 188 P.3d 32 (2008), *In re Marriage of Case* does not stand for the "broad proposition" that lump-sum payments are not included income. Rather, we recognized in *In re Marriage of Case* that "'[d]omestic gross income includes "every conceivable form of income, whether it be in the form of earnings, royalties, bonuses, dividends, interest, maintenance, rent, or whatever."'" *In re Marriage of Ormiston*, 39 Kan. App. 2d at 1080 (quoting *In re*

28

*Marriage of Case*, 19 Kan. App. 2d at 892). We also noted the Kansas Child Support Guidelines "explicitly *include* income that *is* regularly and periodically received." *In re Marriage of Ormiston*, 39 Kan. App. 2d at 1081. And in *In re Marriage of Dimond*, we upheld the exclusion of funds generated from the liquidation of an asset set aside to her in the divorce because the funds were not "regular and periodic income." 2008 WL 3369094, at *4.

Mother does not address the district court's factual finding that she regularly and periodically uses income beyond what she receives from her part-time job and yearly dividends to pay her monthly expenses. The Guidelines "define domestic gross income as income from all sources, including that which is regularly or periodically received, excluding public assistance and child support received for other children in the residency of either parent." *In re Marriage of Matthews*, 40 Kan. App. 2d 422, Syl ¶ 4. Income, under the Guidelines, "mean[s] every conceivable form of income, whether it be in the form of earnings, royalties, bonuses, dividends, interest, maintenance, or rent." 40 Kan. App. 2d 422, Syl ¶ 5. Thus, it was proper for the district court to include this additional income since it falls within the Guidelines' definition of domestic gross income.

While Mother argues the district court should not have included this income because she liquidated assets to pay for the divorce proceedings, she fails to address the caselaw the court cited which holds the court cannot consider how the income is used when determining whether it qualifies as gross income. In *In re Marriage of Dean*, we held the Guidelines "do not grant a district court the discretion to exclude non-liquid capital gains from rental income received by self-employed persons." 56 Kan. App. 2d 770, Syl. ¶ 5. We relied on *In re Marriage of Matthews*, in part, because that case noted: "'[T]he fact that [Father] chose to use his income to pay for an asset he purchased does not change the character of the money from "income" to "non-income" for purposes of calculating child support under the Guidelines.'" *In re Marriage of Dean*, 56 Kan. App. 2d at 777 (quoting *In re Marriage of Matthews*, 40 Kan. App. 2d at 429). The same is

true here. The fact that Mother chose to use her income to pay for attorney fees does not change the character of the money from "income" to "non-income" for purposes of calculating child support under the Guidelines. The district court noted, in quoting *In re Marriage of Matthews*, 40 Kan. App. 2d at 429, "how a party chooses to use their income 'does not change the character of the money from "income" to "non-income."'" Nor does Mother address the district court's finding that Mother regularly liquidated assets to pay her monthly expenses. Realized capital gains which are periodically and regularly received by a parent can be included in that parent's gross income for the calculation of child support under the Kansas Child Support Guidelines.

We therefore find no error in the district court's inclusion of Mother's realized capital gains in her domestic gross income for child support purposes.

C. *Mother failed to preserve her remaining objections to the child support calculation.*

On appeal, Mother also raises two more objections to the district court's calculation of Father's income in its child support calculations. First, she alleges Father depreciated a vehicle he purchased which reduced his gross income for child support purposes. Next, she alleges the court should not have deducted the cost of the children's health insurance from Father's income because his company pays this expense. Father alleged Mother failed to raise these objections before the district court so they are unpreserved for appeal. We agree. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022) (Generally, issues not raised before the district court cannot be raised on appeal.).

Mother failed to cite in her brief where she made these arguments below. An independent review of the record reveals Mother raised these issues in her motion to alter or amend, filed after the hearing. And in denying that motion, the district court found Mother should have raised these arguments at the hearing.

30

In his brief on appeal, Father alleged Mother failed to preserve these arguments. While Mother filed a reply brief, she did not address this issue in it. After oral argument, she filed a purported Rule 6.09 letter in which she recited snippets of Father's hearing testimony which briefly mentioned these two items along with generic citations to various child support worksheets. See Supreme Court Rule 6.09(a)(2) (2024 Kan. S. Ct. R. at 40). But the purpose of a Rule 6.09 letter is to notify the court of "persuasive or controlling authority" that was published either after a party's appellate brief was filed or after oral argument, not to correct a party's failure to comply with Rule 6.02(a)(5). Rule 6.09(a)(2) (2024 Kan. S. Ct. R. at 40). Further, none of the record citations provided in Mother's letter show that Mother brought these issues to the district court's attention. A mention of these items in Father's testimony or child support worksheets with no objection from Mother before or during the hearing is not sufficient to notify the district court that Mother is challenging the inclusion of these items. And as Father points out, these items are intertwined with other factual considerations made by the district court, which would have required Mother to raise her objections below.

Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) requires an appellant to cite "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on" in the district court. Or "[i]f the issue was not raised below," the brief must include "an explanation why the issue is properly before the court." Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). Because Mother fails to point to where in the record on where the district court ruled on her argument, she failed to preserve her argument for review.

FATHER'S MOTION FOR ATTORNEY FEES ON APPEAL

After oral argument, Father moved for attorney fees on appeal under Rule 7.07(a)(4) and (c) (2024 Kan. S. Ct. R. at 52). Father alleges justice and equity require that we grant him an award of fees in this case because Mother's appeal stayed the district

31

court's judgment of child support, meaning Father has had to pay out fees on appeal while being denied payment of child support assessed by the district court. He also alleges the appeal is frivolous because Mother raised no justiciable issue.

While we empathize with Father's difficult financial situation, we do not find Mother's appeal was frivolous nor do we find the equities of this situation in particular support an award of fees. To award fees simply because the underlying judgment is stayed while the matter is on appeal would chill parties' exercise of their legal right to appeal. The staying of an underlying judgment is a normal occurrence in appellate practice, which can have difficult but not unusual consequences. We do not find the circumstances here to be unusual enough to justify an award of fees. And while Mother was unsuccessful on appeal, this was a fact intensive and complicated case in which emotions ran high. We find the issues she raised to be justiciable even though they were not persuasive. Therefore, we deny Father's motion for attorney fees on appeal.

CONCLUSION

We see no error in the district court's admission of Dr. Prado's testimony and related documents, nor do we see error in its assessment of parenting time and child support. We therefore affirm its decisions.

Affirmed.