NOT DESIGNATED FOR PUBLICATION

No. 127,499

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

OMAR DIOSDADO,
*Appellee*,

v.

H.G.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES F. VANO, judge. Oral argument held August 5, 2025.
Opinion filed April 3, 2026. Affirmed in part, reversed in part, and remanded with directions.

*Kathryn T. Alsobrook*, *Sydney N. Paquette*, and *Maya J. S. Kapadia*, of Dysart Taylor McMonigle
Brumitt & Wilcox, P.C., of Kansas City, Missouri, for appellant.

*Tyler L. Childress*, *Thomas J. Bath Jr.*, and *Tricia A. Bath*, of Bath & Edmonds, P.A., of
Leawood, for appellee.

Before ISHERWOOD, P.J., SCHROEDER and PICKERING, JJ.

PICKERING, J.: H.G. accused Diosdado of rape, which resulted in criminal charges being filed against Diosdado. Based on H.G.'s accusations, Diosdado filed a petition against H.G., claiming false light invasion of privacy, intentional infliction of emotional distress, and defamation. H.G. filed a motion to strike Diosdado's claims under the Kansas Public Speech Protection Act (KPSPA), K.S.A. 60-5320. The district court denied the motion, finding H.G.'s statements were protected but also finding Diosdado met his burden to show a likelihood of prevailing on his claims. After a thorough review of the record, we affirm in part, reverse in part, and remand with directions.

1

Diosdado and H.G. worked together as police officers in the Overland Park Police Department (OPPD). On March 31, 2023, H.G. filed a police report alleging Diosdado raped her at his home on March 16, 2023. On April 18, 2023, H.G. filed a protection from stalking (PFS) petition against Diosdado. Two days later, Diosdado was charged with rape, criminal restraint, two counts of battery, and two counts of aggravated sexual battery.

In September 2023, Diosdado filed a petition for damages against H.G., alleging false light invasion of privacy, intentional infliction of emotional distress, and defamation. Diosdado alleged that, on March 16, 2023, he and H.G. "had consensual touching" and H.G. falsely claimed they had nonconsensual sex. For his false light and intentional infliction of emotional distress claims, Diosdado cited H.G.'s PFS petition and the criminal charges based on H.G.'s statements. For his defamation claim, Diosdado referenced the PFS petition and criminal charges while alleging H.G. "made repeated communications to multiple people of false information" in March and April 2023.

In December 2023, H.G. filed a motion to strike Diosdado's claims and dismiss his petition under the KPSPA. She argued that the statements forming the basis for Diosdado's claims—the PFS petition and statements resulting in criminal charges— involved the exercise of her right to free speech and her right to petition. H.G. contended Diosdado could not overcome the privilege afforded to statements made in connection with judicial proceedings to establish a likelihood of prevailing on his claims. H.G. attached an affidavit in support of her motion.

Two weeks later, Diosdado filed a motion for limited discovery and for extension of time to file a response to H.G.'s motion. He requested limited discovery relevant to H.G.'s motion to strike under K.S.A. 60-5320(e)(1), along with an extension of 30 days to

respond to H.G.'s motion or until the end of limited discovery. Diosdado claimed he had received discovery in his criminal case indicating that, before filing the police report, H.G. had also communicated her rape allegation to coworkers at the OPPD, who "were not receiving information in their capacity as police officers but as friends/co-workers." Diosdado wanted discovery as to whom H.G. communicated the rape allegation and the contents of those conversations.

To his motion, Diosdado attached an affidavit explaining his version of events on March 16, 2023. He claimed H.G.'s allegations against him—as detailed in police reports—were false. He also referenced the police reports' descriptions of individuals to whom H.G. stated Diosdado had raped her. Diosdado alleged that, because police spoke to his friends and former coworkers based on H.G.'s statements, he suffered reputational harm. He also claimed local media had publicized his criminal charges and, based on H.G.'s statements, he lost his job at the OPPD and was discharged from the Army.

H.G. filed a reply opposing Diosdado's motion, arguing Diosdado did not show good cause for limited discovery.

At the hearing on both parties' motions, Diosdado requested that the district court allow limited discovery before holding a final hearing on H.G.'s motion to strike. Alternatively, he argued his affidavit in support of his motion for limited discovery met his burden to show a likelihood of prevailing on his claims to defeat H.G.'s motion to strike. H.G. opposed Diosdado's request for discovery and argued that Diosdado's affidavit did not meet his burden to show a likelihood of prevailing on his claims. She contended that because Diosdado's petition relied on statements protected by the KPSPA, the district court should dismiss the petition. Diosdado claimed the petition did "not fully encompass all of the acts," some of which included statements to individuals not subject to any privilege.

The district court found there was no need for limited discovery and denied Diosdado's motion. The district court then considered H.G.'s motion to strike. It found H.G. met her burden to show the statements at issue were protected by the KPSPA. The court then concluded Diosdado's affidavit met his burden to establish substantial competent evidence of a likelihood of prevailing on his claims. The court explained, "I think there is a sufficient showing in the [a]ffidavit to show if it's believed . . . . Ultimately if what [Diosdado] says is true then you prevail on that defamation claim to cover the elements, I think." Therefore, the district court denied H.G.'s motion to strike. H.G. filed an interlocutory appeal from the district court's ruling under K.S.A. 60-5320(f)(2).

ANALYSIS

I.     *The District Court Did Not Err in Finding H.G. Met Her Burden to Show Her Statements Were Protected by the KPSPA*

*Standard of Review*

Appellate courts exercise unlimited review over a district court's decision to grant or deny a motion to strike under the KPSPA. *Kansas Governmental Ethics Comm'n v. Shepard*, 65 Kan. App. 2d 1, 6, 556 P.3d 890 (2024). Statutory interpretation, which is a question of law, is likewise subject to unlimited review. *Roe v. Phillips County Hospital*, 317 Kan. 1, 5, 522 P.3d 277 (2023).

*Discussion*

The KPSPA is an "anti-SLAPP statute," intended to prevent "'strategic lawsuits against public participation'"—a SLAPP. *Doe v. Kansas State University*, 61 Kan. App. 2d 128, 135, 499 P.3d 1136 (2021). The statute "allows a party to bring a motion to strike

4

a claim if the claim 'is based on, relates to or is in response to [that] party's exercise of the right of free speech, right to petition or right of association.'" 61 Kan. App. 2d at 135.

The statute is meant to "'encourage and safeguard the constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issue of public interest to the maximum extent permitted by law while . . . protecting the rights of a person to file meritorious lawsuits for demonstrable injury.'" K.S.A. 60-5320(b). The KPSPA's provisions "shall be applied and construed liberally to effectuate its general purposes." K.S.A. 60-5320(k).

The KPSPA employs a two-step burden shifting test for a motion to strike. First, the movant must make a prima facie showing that the claim at issue "concerns a party's exercise of the right of free speech, right to petition or right of association." K.S.A. 60-5320(d). If the movant makes this showing, the responding party then must "establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case." K.S.A. 60-5320(d). If the responding party meets its burden at step two, then the district court must deny the motion to strike. K.S.A. 60-5320(d).

The statute defines the "'[e]xercise of the right of free speech'" as "a communication made in connection with a public issue or issue of public interest." K.S.A. 60-5320(c)(4). The phrase "'[p]ublic issue or issue of public interest'" includes, among other things, issues relating to "[h]ealth or safety" or "a public official or public figure." K.S.A. 60-5320(c)(7)(A), (D).

"'Exercise of the right to petition'" encompasses, in relevant part, communications regarding "[a] judicial proceeding," "a communication in connection with an issue under consideration or review by a legislative, executive, judicial or other governmental or official proceeding," and "a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial or other

5

governmental or official proceeding." K.S.A. 60-5320(c)(5)(A)(i), (B), (C). The statute defines "'[c]ommunication'" as "the making or submitting of a statement or document in any form or medium, including oral, visual, written or electronic." K.S.A. 60-5320(c)(2).

H.G. argues the district court correctly found that she met her initial burden to show the statements at issue were protected under the KPSPA. She claims her PFS petition and her statements to police that resulted in Diosdado's criminal charges both fell under the exercise of her right to free speech as communications regarding community health and safety. She submits that Diosdado—as a police officer—was a public official as a matter of law. H.G. also contends her statements were exercises of her right to petition; her PFS petition was a judicial proceeding; and her statements to police were communications reasonably likely to encourage review by a judicial proceeding.

Diosdado agrees that some of H.G.'s statements were protected. But he submits that H.G.'s other statements—made to coworkers at the OPPD who were not involved in either the criminal charges or the PFS petition—were not protected under the KPSPA. Therefore, as to H.G.'s statements to OPPD coworkers, Diosdado believes H.G. failed to meet her burden that the KPSPA applied. Diosdado also disagrees that his role as a police officer qualified him as a public official for the purpose of H.G.'s rape allegations. He contends that because he was off duty and acting in his private capacity at the time of the alleged rape, H.G.'s allegations did not concern him as a public official.

The parties do not dispute that H.G.'s PFS petition and statements to police were protected by the KPSPA, and other courts have held similar communications to be protected by anti-SLAPP laws. See *Benoit v. Frederickson*, 454 Mass. 148, 153, 908 N.E.2d 714 (2009) (finding report of rape to police initiating criminal charges protected as petitioning activity); *Doe v. Roe*, 638 S.W.3d 614, 620 (Tenn. Ct. App. 2021) (finding filing of Title IX complaint protected as exercise of free speech). The district court did not err in finding the PFS petition and statements to police were protected by the KPSPA.

6

The dispute on this issue involves H.G.'s alleged communications to coworkers at the OPPD and Diosdado's role as a public official. H.G. relies on *Rawlins v. Hutchinson Publishing Co.*, 218 Kan. 295, 543 P.2d 988 (1975), and *Redmond v. Sun Publishing Co.*, 239 Kan. 30, 716 P.2d 168 (1986), for her suggestion that police officers are public officials as a matter of law.

A.      *Diosdado's role as a public official*

In *Rawlins*, the Hutchinson Publishing Company's newspaper published two columns discussing Rawlins' firing from the police department 10 years prior for alleged misconduct with a woman. Rawlins sued for invasion of privacy, contending he had led a private life for the last 10 years and the newspaper had published information about his private affairs. The newspaper had also previously reported on Rawlins' firing at the time it initially happened. The Supreme Court found that, because Rawlins was a police officer at the time of his initial firing, "[h]e was a public official, in whose conduct the public has a vital interest." 218 Kan. at 298. The court was unpersuaded by the fact that the newspaper published the columns 10 years after the firing. Because Rawlins' firing involved his conduct in office, "[o]nce these facts entered the public domain they remained there." 218 Kan. at 305. The publications on Rawlins' firing were thus privileged and could not form the basis for an invasion of privacy claim. 218 Kan. at 305.

The *Redmond* court cited the *Rawlins* holding that a police officer is a public official even if he or she does not hold any special rank in the police department. The court explained:  "A police officer assumes a public role by becoming a public official and thereby waives his right of privacy as to any conduct which bears on his fitness for that office." *Redmond*, 239 Kan. at 34.

Diosdado attempts to distinguish *Rawlins*, pointing out that Rawlins' misconduct occurred while he was on duty whereas H.G.'s rape allegations concerned Diosdado's off-

7

duty conduct. He also cites the *Rawlins* court's statement that "those who voluntarily step upon the public stage thereby forego their right of privacy, *at least as to their conduct in their public roles*." (Emphasis added.) 218 Kan. at 300. Diosdado suggests the *Rawlins* holding "had no bearing on the *Redmond* decision," given that *Redmond* involved a libel claim by a former candidate for public office.

Diosdado is correct in that the *Redmond* decision primarily focused on Redmond's role as a political candidate rather than his prior time as a police officer. 239 Kan. at 34-35. But Diosdado's attempted distinctions otherwise miss the mark. He ignores the *Rawlins* court's holding that a public official "waives his right of privacy as to any conduct which bears on his fitness for that office." 218 Kan. 295, Syl. ¶ 2.

In other cases involving criminal allegations against public officials, courts have highlighted that such allegations touch on the person's fitness for office even if they may involve private conduct. See *Smith v. Huntsville Times Co., Inc.*, 888 So. 2d 492, 498-99 (Ala. 2004) (rejecting police officer's argument that article detailing obscenities and racial epithets directed at neighbor concerned officer's off-duty role as landlord); *Lane v. MPG Newspapers*, 438 Mass. 476, 484, 781 N.E.2d 800 (2003) (finding "a 'charge of criminal conduct against an official or a candidate . . . is always relevant to his [or her] fitness for office . . . .'"); *Tomkiewicz v. Detroit News, Inc.*, 246 Mich. App. 662, 674, 635 N.W.2d 36 (2001) (finding article misidentifying plaintiff as officer charged with stalking still relevant to plaintiff's fitness for office); *Shafer v. Lamar Pub. Co., Inc.*, 621 S.W.2d 709, 711 (Mo. Ct. App. 1981) (finding article alleging police officer had illicit sexual relations with teenager "may have referred to private conduct" but concerned officer's fitness for office).

Here, each statement Diosdado claims was defamatory entailed an allegation of criminal conduct—rape. Because such an allegation bears on Diosdado's fitness for his role as a police officer, it makes no difference that the alleged rape may have occurred

while Diosdado was off duty. Accordingly, his argument that H.G.'s statements concerned his private conduct fails.

B.     *Protection for communications to coworkers*

H.G.'s argument that her statements were protected exercises of her right to petition focuses on Diosdado's claims regarding her PFS petition and statements to police. Diosdado contends the statements forming the basis for his claims went beyond those protected statements to include H.G.'s communications to coworkers at the OPPD. Diosdado believes these communications were not protected by the KPSPA because their OPPD coworkers were not involved in either the criminal charges or H.G.'s PFS petition.

In his affidavit, Diosdado made the following allegations regarding H.G.'s communications to OPPD coworkers:

- According to phone records, H.G. texted a coworker "thank[ing] him for listening and supporting." H.G. apologized for "'dumping' this all on" the coworker, to which the coworker responded that H.G. did not "'have to put up with that shit.'" H.G. stated she spoke to a Kansas City, Kansas Police Department (KCKPD) detective, and days later texted that Diosdado was in custody. H.G. and the coworker then discussed H.G.'s "claim that she has no memory and may not want to know what happened."
- According to phone records, H.G. texted a coworker stating she would call her. Forty minutes later, the coworker texted H.G. "to thank her for trusting her and to say other supportive words." H.G. "responded that it felt good to tell someone." H.G. later told the coworker she had spoken to a KCKPD detective.
- Police reports showed on March 22, 2023, H.G. "told a female [coworker] that [Diosdado] sexually assaulted her."

9

- Police reports showed on March 24, 2023, H.G. "told a male [coworker] that [Diosdado] sexually assaulted her."

As Diosdado suggests, these communications do not appear to be connected to H.G.'s statements to KCKPD detectives or her PFS petition. That said, Diosdado's argument only addresses the right to petition. These communications to coworkers still concerned Diosdado as a public official, which fall under the KPSPA's protection of the exercise of free speech. See K.S.A. 60-5320(c)(7)(D).

The Texas Supreme Court addressed a similar contention in *Lippincott v. Whisenhunt*, 462 S.W.3d 507 (Tex. 2015). The court held the definition of "communication" in Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1), its anti-SLAPP statute, contained "no requirement that the form of the communication be public." Instead, the statute "broadly included both public and private communication." 462 S.W.3d at 509.

The Kansas and Texas anti-SLAPP statutes have near identical definitions of "communication." See K.S.A. 60-5320(c)(2) ("'Communication' means the making or submitting of a statement or document in any form or medium, including oral, visual, written or electronic."); Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1) ("'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic.").

Accordingly, we agree with the Texas Supreme Court:  There is no requirement that a communication be public to fall under KPSPA protection. Even though H.G.'s communications to coworkers were not related to her petitioning activities, they were still protected as exercises of her right to free speech. The district court did not err in finding H.G. met her burden to show the statements at issue were protected by the KPSPA.

II.    *The District Court Did Not Err in Finding Diosdado Met His Burden to Show a Likelihood of Prevailing on His Claims*

In his petition, Diosdado alleged false light invasion of privacy, intentional infliction of emotional distress, and defamation. To succeed on his false light invasion of privacy claim, Diosdado must show:  (1) H.G. communicated to a third party; (2) the communication falsely represented Diosdado; and (3) the false representation is "'highly offensive to a reasonable person.'" See *Dominguez v. Davidson*, 266 Kan. 926, 937, 974 P.2d 112 (1999).

To establish intentional infliction of emotional distress, Diosdado must show:  (1) H.G. acted intentionally or in reckless disregard of Diosdado; (2) H.G.'s "conduct was extreme and outrageous"; (3) H.G.'s conduct caused Diosdado's mental distress; and (4) Diosdado's "mental distress was extreme and severe." See *Valadez v. Emmis Communications*, 290 Kan. 472, Syl. ¶ 1, 229 P.3d 389 (2010).

Diosdado's defamation claim requires him to show:  (1) false and defamatory words; (2) were communicated to a third person; (3) causing harm to his reputation. See *Marcus v. Swanson*, 317 Kan. 752, 755, 539 P.3d 605 (2023).

Kansas courts treat both false light invasion of privacy and intentional infliction of emotional distress similar to defamation in terms of privilege defenses and malice requirements. See *Valadez*, 290 Kan. at 477 ("[C]onduct that would otherwise be extreme and outrageous may be privileged under the circumstances."); *Dominguez*, 266 Kan. at 938 (holding "'[t]ruth and privilege are defenses'" to false light invasion of privacy and defamation, with showing of actual malice required); *Clevenger v. Catholic Social Service of the Archdiocese of Kansas City*, 21 Kan. App. 2d 521, 530, 901 P.2d 529 (1995) (finding intentional infliction of emotional distress similar to defamation, with direct evidence of malice required).

A. *The district court did not err by declining to find all of H.G.'s statements absolutely privileged.*

*Standard of Review*

The district court's ruling granting or denying a motion to strike under K.S.A. 60-5320 is subject to unlimited review. *Shepard*, 65 Kan. App. 2d at 6. "The question of whether or not a publication is privileged is a question of law to be determined by the court." *Bradford v. Mahan*, 219 Kan. 450, 455, 548 P.2d 1223 (1976).

*Discussion*

There are two types of privilege pertaining to defamation actions: absolute privilege and qualified privilege. "[A]bsolute privilege is recognized in cases where the public service or the administration of [justice] requires complete immunity, as in legislative, executive, or judicial proceedings, the occasion for the immunity being not so much for those engaged as for the promotion of the public welfare." 219 Kan. at 454.

Qualified privilege, on the other hand, does not provide complete immunity but establishes "a prima facie" defense if the communication is "made in good faith, without actual malice and with reasonable grounds for believing the statement to be true." 219 Kan. at 454. Qualified privilege applies if a communication "'is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, if it is made to a person having a corresponding interest or duty.'" 219 Kan. at 456.

The "'essential elements'" for this defense "'are good faith, an interest to be upheld, a statement limited in its scope to the upholding of such interest and publication in a proper manner only to proper parties.'" 219 Kan. at 456. When qualified privilege applies,

12

the plaintiff must "plead and prove actual malice." 219 Kan. at 454-55. Actual malice means a person made a statement "with knowledge that the defamatory statement was false or with reckless disregard of whether it was false or not." 219 Kan. at 455.

H.G. contends that, in finding Diosdado showed a likelihood of prevailing on his claims, the district court failed to consider that the PFS petition and statements to police were subject to the litigation privilege as being related to judicial proceedings.

Diosdado responds that the litigation privilege did not apply to all of H.G.'s statements. He points to his affidavit, which identified statements to multiple people who were not involved in either the police report that resulted in his criminal charges or H.G.'s PFS petition. Diosdado submits that because these statements to coworkers were not connected to litigation, they were not subject to any privilege.

In *Froelich v. Adair*, 213 Kan. 357, 360, 516 P.2d 993 (1973), our Supreme Court held that "[j]udicial proceedings are absolutely privileged communications," and communications in the course of litigation are thus immune from invasion of privacy and defamation actions. Therefore, the statements made in H.G.'s PFS petition are subject to absolute privilege as being made in the course of a judicial proceeding.

Next, we consider whether H.G.'s statements to police are subject to absolute or qualified privilege. In *Faber v. Byrle*, 171 Kan. 38, 229 P.2d 718 (1951), our Supreme Court considered a slander action for alleged false statements to police that the plaintiff was stealing gasoline. While the court did not categorically rule on whether reporting an alleged crime to police fell under absolute or qualified privilege, it concluded that, even if such statements fell under qualified privilege, there was no evidence of malice in the case. 171 Kan. at 43; see also *Ali v. Douglas Cable Communications*, 929 F. Supp. 1362, 1385 (D. Kan. 1996) (interpreting *Faber* as applying only qualified privilege to statements to police). Many states have applied only qualified privilege to statements to

13

police. See, e.g., *Berian v. Berberian*, 168 Idaho 394, 483 P.3d 937, 947 (2020) (discussing jurisdictional split on applying absolute or qualified privilege to statements to law enforcement). We agree and find that H.G.'s statements to police that resulted in Diosdado's criminal charges are subject to qualified privilege rather than absolute privilege.

Finally, we must consider whether H.G.'s communications to her OPPD coworkers were subject to absolute, qualified, or no privilege. As discussed, H.G.'s communications to coworkers were protected exercises of her right to free speech because they alleged criminal conduct by a public official. "Defamatory publications concerning public officials and public figures are qualifiedly privileged and recovery requires proof of actual malice." *Scarpelli v. Jones*, 229 Kan. 210, 216, 626 P.2d 785 (1981). Therefore, H.G.'s communications to coworkers were subject to qualified privilege.

In sum, because the statements in H.G.'s PFS petition were connected to a judicial proceeding, absolute privilege applied to those statements. The district court erred in failing to strike Diosdado's claims regarding the PFS petition. H.G.'s statements to the KCKPD and to coworkers both fell under qualified privilege. We are not persuaded by H.G.'s argument that all of her statements are absolutely privileged. Therefore, the district court did not err when it declined to apply absolute privilege to these statements.

B.  *The district court did not apply the wrong standard by accepting Diosdado's affidavit as true.*

*Standard of Review*

Appellate courts exercise unlimited review over a district court's grant or denial of a K.S.A. 60-5320 motion to strike. *Shepard*, 65 Kan. App. 2d at 6.

14

*Discussion*

The burden-shifting test outlined in K.S.A. 60-5320(d) is similar to a summary judgment standard. *Doe v. Kansas State University*, 61 Kan. App. 2d at 136. Because K.S.A. 60-5320(d) requires the district court to consider the pleadings and affidavits to determine whether the responding party presented substantial competent evidence of a likelihood of prevailing, the district court need not accept the allegations in the plaintiff's petition as true. 61 Kan. App. 2d at 148.

In *Northeast Comanche Tribe, Inc. v. Stumpf*, No. 123,642, 2022 WL 5293337, at *2 (Kan. App. 2022) (unpublished opinion), another panel of this court stated: "In considering whether a party has presented a prima facie case [under K.S.A. 2021 Supp. 60-5320(d)], we look at whether the evidence, if unrebutted, would be sufficient to support a verdict or judgment for that party. See *Montgomery v. Saleh*, 311 Kan. 649, 653, 466 P.3d 902 (2020)."

In *Gumm v. Dixon*, No. 127,024, 2025 WL 1155966, at *7 (Kan. App.) (unpublished opinion), *rev. denied* 321 Kan. 788 (2025), the panel found this holding failed to account for the requirement in K.S.A. 2024 Supp. 60-5320(d) that "the responding party must also show a *likelihood of prevailing* on the claim by presenting substantial competent evidence to support each element of the claim. . . . [O]nce the burden shifts . . . the plaintiff bears the burden of showing a likelihood of prevailing on its claim by presenting substantial competent evidence supporting it." 2025 WL 1155966, at *7. However, the panel did not explicitly spell out what level of deference the district court should afford the plaintiff's evidence in making this determination.

Other courts interpreting anti-SLAPP statutes—which also require the responding party to show a likelihood of prevailing on its claims—have taken the *Stumpf* panel's view. See *American Civil Liberties Union, Inc. v. Zeh*, 312 Ga. 647, 653, 864 S.E.2d 422

15

(2021) ("To establish a probability of prevailing on a defamation claim, "'the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'"); *Six4Three, LLC v. Facebook, Inc.*, 109 Cal. App. 5th 635, 654, 330 Cal. Rptr. 3d 661 (2025) ("'We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law.'"); *L.S.S. v. S.A.P.*, 523 P.3d 1280, 1286 (Col. App. 2022) (adopting California standard).

H.G. argues the district court erred in accepting the allegations in Diosdado's affidavit as true. She equates the district court's analysis with a motion to dismiss standard, where the court must accept the allegations in the plaintiff's petition as true. H.G. takes issue with the following statement in the district court's ruling: "I think there is a sufficient showing in the [a]ffidavit to show if it's believed . . . . Ultimately if what [Diosdado] says is true then you prevail on that defamation claim to cover the elements, I think."

Diosdado responds that the district court used the proper standard—the summary judgment standard—in its ruling.

H.G. relies on *Doe v. Kansas State University* for her argument that the district court improperly used a motion to dismiss standard. But that reliance is misplaced. The *Doe v. Kansas State University* panel held that the district court need not accept the allegations in the plaintiff's *petition* as true. 61 Kan. App. 2d at 148. The district court's statement reflects that it accepted the allegations in Diosdado's *affidavit* as true. Moreover, H.G. ignores the district court's earlier statement showing it understood the pleadings themselves were insufficient: "The [a]ffidavit filed by [Diosdado], does meet that substantial competent evidence. That is in addition to the pleading. The pleading

16

itself is not substantial competent evidence, but the [a]ffidavit is substantial competent evidence much like we do in the summary judgment."

The district court's ruling reflects that it used a summary judgment standard, acknowledging that Diosdado's petition by itself was insufficient but accepting his evidence as true. That is consistent with the standards established by other panels of this court for ruling on K.S.A. 60-5320 motions to strike. See *Doe v. Kansas State University*, 61 Kan. App. 2d at 148; *Stumpf*, 2022 WL 5293337, at *2; see also *Zweizig v. Rote*, 818 Fed. Appx. 645, 649 (9th Cir. 2020) (affirming grant of motion to strike where district court accepted plaintiff's allegations as true and plaintiff failed to seek further discovery); *Ferguson v. Maxim*, 96 Mass. App. Ct. 385, 392, 135 N.E.3d 746 (2019) (reversing grant of motion to strike where pleadings and affidavits showed arguable basis for claims). Therefore, the district court did not improperly use a motion to dismiss standard in ruling on the motion to strike.

On appeal, H.G. raises additional issues. She contends: (1) The district court erred in finding Diosdado's affidavit constituted substantial competent evidence to satisfy the elements of his intentional infliction of emotional distress and false light invasion of privacy claims; (2) the district court erred in not granting her motion to strike outright due to Diosdado's failure to file a memorandum in opposition to the motion; (3) the district court erred in considering Diosdado's affidavit because the affidavit was attached to a motion for limited discovery and extension of time to respond, rather than a memorandum in opposition to her motion to strike; and (4) Diosdado's affidavit contained inadmissible hearsay and lacked foundation.

H.G. did not make any of these arguments at the district court. In her motion to strike, H.G. relied solely on her absolute privilege defense. In her reply to Diosdado's motion for limited discovery and extension of time to respond, H.G. reiterated her absolute privilege argument and claimed Diosdado did not attempt to meet his burden. At

the motion hearing, H.G. again limited her argument to a privilege defense. She did not argue that Diosdado's affidavit failed to meet the elements for his claims.

A party generally cannot raise an issue for the first time on appeal. There are three exceptions to this rule: (1) The issue involves only a question of law on proved or admitted facts; (2) consideration is necessary to serve the ends of justice or prevent the denial of a fundamental right; and (3) the district court was right for the wrong reason. In its brief, a party must either cite to the record specifying where the issue was raised and ruled on or explain why the issue is properly before the court. Failure to do so results in waiver and abandonment of the issue. *In re N.E.*, 316 Kan. 391, 407-08, 516 P.3d 586 (2022); see Supreme Court Rule 6.02(a)(5) (2026 Kan. S. Ct. R. at 36).

The preservation section of H.G.'s brief only states that the district court denied her motion to strike and that she filed a timely notice of appeal. She simply reincorporates this statement for her other arguments. H.G. does not explain where she raised these issues before the district court, nor does she assert a preservation exception. See Rule 6.02(a)(5) (requiring an explanation for why an issue raised for the first time on appeal is properly before the court). Our review of the record does not indicate these issues were raised before the district court. Because she raises these issues for the first time on appeal, which deprived the district court of an opportunity to consider these arguments, we find these issues are unpreserved for our review. See *In re Marriage of L.F. and M.F.*, 65 Kan. App. 2d 175, 183, 562 P.3d 1014 (2025).

H.G. raises only two preserved issues: (1) whether her statements were entitled to absolute immunity; and (2) whether the district court employed the appropriate standard by accepting Diosdado's affidavit as true. Neither preserved issue challenges whether the district court correctly determined Diosdado has shown a substantial likelihood of success on the merits or proven actual malice. Given this, we do not submit additional analysis regarding these two issues that were not properly raised below and failed to

follow Rule 6.02(a)(5). To do so would be an abuse of discretion. See *Schutt v. Foster*, 320 Kan. 852, 860, 572 P.3d 770 (2025) (holding the Court of Appeals abused its discretion and committed an error of law by reaching the merits of a claim raised for the first time on appeal that failed to comply with Rule 6.02[a][5]).

III.    *Attorney Fees*

On appeal, H.G. requests $28,635 in attorney fees. This amount encompasses both her attorney fees before the district court and her attorney fees incurred on appeal. Under Supreme Court Rule 7.07(b), "[a]n appellate court may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." 2026 Kan. S. Ct. R. at 52. Based on a plain reading of Rule 7.07(b), we have no authority to award attorney fees for services unrelated to the appeal. Thus, we cannot award H.G.'s district court attorney fees.

H.G. cites K.S.A. 60-5320(g) as the statutory authority for the district court to award attorney fees. Under that statute, "[t]he court shall award the defending party, upon a determination that the moving party has prevailed on its motion to strike, . . . [c]osts of litigation and reasonable attorney fees." K.S.A. 60-5320(g). Because we have not reversed the district court's denial of H.G.'s motion to strike, she is not entitled to attorney fees. See *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1215, 308 P.3d 1238 (2013) (Rule 7.07[b] "provides no greater authority to award attorney fees than the statute applicable to the district court."). We, therefore, deny H.G.'s motion for attorney fees.

In conclusion, we affirm in part, reverse in part, and remand with directions. First, we affirm the district court's denial of H.G.'s motion to strike Diosdado's claims arising from H.G.'s statements to police and coworkers. Those statements are only qualifiedly privileged, and, based on the arguments preserved for our consideration, the district court

did not apply an incorrect standard to determine whether Diosdado showed a likelihood of prevailing on the merits. Next, we reverse the denial of H.G.'s motion to strike based on H.G.'s PFS petition, because those claims are absolutely privileged, and remand this case to the district court to resume proceedings in a manner consistent with this opinion.

Affirmed in part, reversed in part, and remanded with directions.